## TINKHAM *vs.* BORST.

The creditors of a dissolved insolvent corporation have an equitable lien upon its assets, in the hands of another, for the payment of their debts.

And it matters not whether the person holding the assets sought to be charged came by them fairly, or by force or fraud; unless he has acquired a higher or better equity to such assets than the creditor.

When a fund exists in this state, which our own citizens are entitled to have applied to the payment of their debts, the courts will detain and appropriate the fund, although the persons holding it may be accountable to a foreign jurisdiction, in reference to it.

The court will not, in such a case, disregard the rights of other parties, but it will ascertain them, and apply that portion which, after such investigation, is found to belong to our own citizens.

THE questions in this case were presented by demurrers to the second and third causes of action set forth in the complaint. These demurrers were sustained. There having been issues of fact on the first cause of action, and judgment by default against the plaintiff on that cause of action, after the demurrers to the second and third causes of action were sustained, final judgment was rendered in favor of the defendant for costs. The plaintiff appealed from the final judgment. The facts, as alleged in the second count or cause of action, and admitted by the demurrer, are as follows: On the 27th day of February, 1850, a general banking law was enacted by the legislature of New Jersey. By this law the treasurer of state was authorized to issue circulating notes to any associa-

tion organized under the law, on the deposit with him of certain state stocks, which notes the association was then authorized to put in circulation as money, on the conditions named in the act. Any number of persons not less than seven might associate under said act, by making and signing a certificate under their hands and seals, specifying the name of the association, its place of business, the amount of capital stock, the number of shares, the names and residence of the stockholders and the amount subscribed by each of them, and the term of duration of the association; which certificate should be proved and acknowledged, and recorded in the office of the secretary of state and of the clerk of the county; and on the making and recording thereof, the said associates should become a body politic and corporate, clothed with the banking powers conferred by the act. On the 24th day of November, 1851, the defendant associated himself with six other persons under said act, and they filed their certificates of organization, duly signed, sealed and acknowledged, in the clerk's office of the county of Cape May, on the 5th of December, 1851; wherein they designated the bank as the "American Exchange Bank," and "Cape May Court House, in the county of Cape May and state of New Jersey," as its place of business; the amount of the capital stock was $50,000, divided into 2000 shares of $25 each, and the duration of said association from the 1st day of December, 1851, to the 1st day of December, 1871; said certificate was duly signed, sealed and acknowledged, by Tappan Townsend, Francis Brant, Ferdinand F. Cary, Edmund Cooke, John C. Morgan, Jonathan Hand and the defendant; and thereby the defendant subscribed to the capital stock $49,750, and the remainder of said associates one share each, except Tappan Townsend, who subscribed five shares; but all said shares were subscribed for the use of, and controlled by the defendant. After said association was organized, it issued circulating notes under the act, to the amount of $16,000, which were put in circulation by the defendant. On the 14th of September, 1852, while the bank was

still reputed solvent, one R. Eaton drew his bill of exchange of that date at Chicago, in the state of Illinois, on said bank, for the sum of $5243.55, payable to his own order, at sixty days date, which bill was duly accepted by the bank, and indorsed and delivered by the payee to the plaintiff, for value. The bill at maturity was duly protested for non-payment. In the year 1853, the plaintiff recovered judgment on the bill, against the bank, in the supreme court of New Jersey, for the sum of $5647.94, on which an execution was duly issued, and returned " *nulla bona,*" and that the sheriff " found no such bank, office or officers in the county." The bank then was, and still is, insolvent, and has no property or assets out of which the judgment, or any part of it, can be made. The judgment is in full force and wholly unsatisfied. The defendant furnished and owned all the securities which were deposited as a basis for the circulation of the bank, and owned and controlled for his own use and benefit, all the stock of the bank ; and with intent to fraudulently appropriate the capital and assets to his own use, and to defraud the creditors of the bank, abstracted from its vaults all its circulating notes, amounting to $16,000, without paying the bank any consideration therefor, or making any agreement with the bank for a loan, or giving any note, or security or evidence of debt for the repayment thereof, and without the consent of said bank, and converted the same to his own use. The defendant has never since paid said sum, or any part thereof, to or for the use of the bank ; and the abstraction of said circulating notes deprived the bank of all its assets and means of doing business, and paying the plaintiff's debt, and reduced it to insolvency. On the 22d day of May, 1853, the bank was restrained by an order of injunction of the court of chancery of the state of New Jersey, from the exercise of its franchises as a corporation ; in pursuance of an order of said court of the 23d of June, 1853; the treasurer of that state applied all the stocks deposited with him by the bank, to the redemption of its circulating notes ; the bank became and was duly declared

insolvent; the corporation has been dissolved by the decree of said court of chancery, and has now no legal existence; the liability of the defendant to the bank, for the abstraction of its assets, has never been enforced, and the plaintiff claimed that he had a right to be subrogated in the place of the bank, and enforce said liability. The plaintiff is the only creditor of said bank; the defendant, when said bill was accepted, was the sole owner and virtually the sole stockholder of said bank, and all the other stockholders are insolvent. The third count or cause of action states no additional fact, except that the defendant has never paid any part of his stock subscription, and it insists that the plaintiff has the right to be subrogated in the place of the bank, and collect so much of said stock subscription as will be necessary to satisfy his claim. The grounds of demurrer are; as to the second cause of action, that it does not contain facts sufficient to constitute a cause of action; as to the third count, the same, with the additional ground, that it contains no statements of fact, but only conclusions of law.

*J. L. Jernegan,* for the plaintiff.

*John E. Burrill,* for the defendant.

*By the Court,* MULLIN, J. The second count or cause of action in this complaint charges in substance that the plaintiff is a creditor by judgment of the American Exchange Bank, a banking corporation, located in New Jersey and organized under the banking law of that state, which is substantially like the general banking law of this state. It is also alleged that said corporation, having become insolvent, was dissolved by the court of chancery of that state; that the defendant, being the principal stockholder in said bank, fraudulently abstracted the assets of said bank to the amount of some $16,000, and that the plaintiff is the only creditor of said bank. The relief demanded is that the defendant pay to the plaintiff his

said debt with the costs of the action, and such other or further relief as the court may deem proper.

There is a demurrer to this cause of action, on the ground that it does not contain facts sufficient to constitute a cause of action. The demurrer admits the facts alleged in the complaint.

The question which lies at the foundation of this action is this: Have the creditors of a dissolved insolvent corporation a lien on its assets for the payment of their debts? If they have, it would not seem to be very material in whose hands the assets were, or how they came into the hands in which they are sought to be charged; unless the holder has acquired a higher or better equity to such assets than the creditor. In other words, it does not seem to me to be material whether the person holding them came by them fairly, or by force or fraud.

Have these creditors, then, of an insolvent corporation, such an equitable lien as is claimed in this case? At common law the assets of a dissolved corporation reverted to the crown, and the debts due by it were canceled. (2 *Kent's Com.* 307. *Angell & Ames on Corp.* 667.)

A rule so repugnant to every principle of right and justice should not be followed, unless it is imperatively required by the binding force of express adjudication. While the existence of the old rule is admitted, that it is now the law in this state, aside from the statute, may, I think, be safely denied. The provision now in force, (2 *R. S. 5th ed.*, 597, § 9,) declaring that on the dissolution of a corporation the directors or managers, unless some other persons shall be designated, shall be trustees of the creditors and stockholders, was copied from 1 *R. L.* 248, § 1. This statute does not in terms create a lien of any kind on the corporate property. But it recognizes very distinctly the right of creditors and stockholders to the assets, and constitutes the directors the trustees to take charge of them for the parties entitled.

In *Mann* v. *Pentz* (3 *Comst.* 415) Judge Pratt asserts, in the most distinct terms, the existence of the equity, and relies,

in support of the proposition, not on the statute but upon cases in Massachusetts and in chancery in this state.

I entertain no doubt but that creditors of dissolved insolvent corporations have a lien on the assets, for the payment of their debts.

It is insisted that if there is any right to charge the defendant with the debts of this corporation, the creditor cannot do it in his own name, but the receiver whom the law will presume to have been appointed by the court of chancery of New Jersey, on dissolving the corporation, or the state itself should be the party plaintiffs.

The defendant and the fund sought to be charged are both in this state; the plaintiff is seeking the aid of our courts to enforce a plain equity under circumstances which entitle him to relief if it can be consistently rendered. It is not alleged that the equity claimed is not recognized in New Jersey, and as that state has a court of chancery we must presume that it recognizes the existence of this equity. But we cannot presume that that court has appointed a receiver of the effects of the dissolved corporation; but if it had, it is by no means clear that he could maintain an action as such in this state. Nor has it been suggested how the state could sue, unless it was upon the ground that it owned the assets by reverter.

Where a fund exists in this state which our own citizens are entitled to have applied to the payment of their debts, the courts will detain and appropriate the fund, although the persons holding it may be accountable to a foreign jurisdiction in reference to it. The court will not, in such case, disregard the rights of other parties, but it will ascertain them and apply that portion which after such investigation is found to belong to our own citizens.

It was said, on the argument, that there is no privity between the plaintiff and the bank, to which the right of action for the fraudulent conversion of the assets of the bank belonged, and because the plaintiff cannot maintain this suit. This action

is not sustainable on any such theory. It rests on the equity already referred to, and not on privity, or upon any assignment legal or equitable.

I am of the opinion that the second cause of action does contain facts sufficient to maintain the action, and that the demurrer to it could not be sustained. But the third cause of action is defective.

The order appealed from must be affirmed as to the third cause of action and reversed as to the second; with leave to the plaintiff to amend his complaint and to the defendant to answer; costs of the appeal to abide the event.

NEW YORK GENERAL TERM, May 7, 1860. *Sutherland, Mullin* and *Leonard,* Justices.]