## HOPKINS *v.* CROSSLEY.

1. APPEAL—FINAL ORDER—TIME TO PROSECUTE.

An order allowing compensation to counsel for complainant in a suit relating to the distribution of a fund belonging to a corporation duly dissolved, entered before a final decree of distribution, on proof by affidavit of the services rendered and their value, but not made on an issue joined or heard on pleadings and proofs, is a final order, necessitating the taking of an appeal therefrom within 40 days, under the express provisions of Act No. 243, Pub. Acts 1899, § 144.

2. ESCHEATS—CLAIM BY STATE.

An escheat can be asserted only by the State.

3. CORPORATIONS—DISSOLUTION—DISPOSITION OF FUNDS—FAILURE OF TRUST—ESCHEAT.

    The fund remaining in the hands of the Old Volunteer Fire Department of Detroit, on failure of the trust attempted to be created on dissolution of the corporation, did not escheat to the State, but should be divided among the persons recognized as members at the time of the dissolution, and the personal representatives of such deceased members.

Appeal from Wayne; Hosmer, J. Submitted November 16, 1904. (Docket No. 90.) Decided December 22, 1904.

Bill by Robert Hopkins and others against Luke Crossley and others to set aside a trust. On a settlement of the decree, defendants appeal. Reversed.

*John J. Speed*, for complainants.

*Fred A. Baker*, for defendants.

HOOKER, J. A perusal of the case of *Hopkins* v. *Crossley*, 132 Mich. 612, will make intelligible the facts upon which the present proceeding rests. A decree was entered in conformity to that opinion, and the cause was remanded to the circuit court for the county of Wayne, where an investigation was made of the claims of persons asserting interests in the fund which was the subject of the litigation.

On February 1, 1904, after the hearing, but before final decree upon the merits, that court made an order allowing compensation from the fund to counsel for the complainants for their services, and directing the trustees to pay the same to counsel. On March 15, 1904, a final decree was made upon the merits of the cause, adjudging that the fund had escheated to the State, and ordering the trustees to pay over to the State the remainder, after deducting allowances therein mentioned. It directed service of the brief upon the attorney general, in case of appeal, which we understand to have been done.

On March 16, 1904, counsel for the trustees filed and served a claim of appeal from the final decree and said order, each being specifically and separately mentioned. The appeal was perfected and entered, and the cause is now before us for consideration upon the final decree, and a motion to dismiss the appeal from the order, which motion was seasonably made, the hearing thereof having been continued to the hearing of the principal controversy.

The statute provides:

"SEC. 144. In all cases disposed of upon pleadings and proofs such appeal shall be claimed by a written claim delivered or transmitted to the register of the court, where such decree or order was entered, within forty days from the settlement of the case on such appeal as provided by law, and in all other cases within forty days from the entry of such decree or final order which said register shall make entry thereof." Act No. 243, Pub. Acts 1899.

It is claimed that, while no testimony was taken at the hearing on the petition of counsel for the allowance for compensation, the facts on which the allowance was made were shown on the hearing of the cause before Judge Hosmer, and that testimony was not settled until April 4, 1904, and it is said that the record covers both phases of the case, and the appeals could be taken within 40 days from either the order making the allowance or the decree of distribution. The order was made upon proof, by affidavit, of the services rendered, and their value. It was not made upon an issue joined, or heard upon pleadings and proofs. It was a final order, and should have been appealed from within 40 days. It follows that the appeal should be dismissed so far as it applies to such order.

By reference to our former opinion (132 Mich. 612), it will appear that the "Old Volunteer Fire Department of Detroit" was incorporated by special act of the legislature (Laws 1840, Act No. 14). Section 6 of the act, as amended in 1869 (3 Laws 1869, Act No. 440), provided the uses to which its fund should be devoted. In the opinion of the learned circuit judge, this corporation was

a public corporation and a public charity, and upon its dissolution its remaining property escheated to the State. He expressed the opinion that, if it were a private instead of a public charity, the result would be the same.

We may observe, in this connection, that an escheat must usually be asserted by the State. No one else can do so. In this case no one has asserted it. On the contrary, the attorney general, though notified of the decree and of this appeal, has not thought advisable to make any claim to this fund on behalf of the State.

Had this fund been donated to the corporation charged with the uses mentioned in section 6 of the act, it could have been sustained as a private charity, for the main, if not exclusive, purpose was to relieve persons interested in the fund, and in such cases the courts do not hold a public charity to have been created. Thus, in *Swift's Ex'rs* v. *Benefit Society*, 73 Pa. St. 362, it was held that "a beneficial society whose benefits and benevolence are confined exclusively to its contributing members is not a charitable use." Two years later (1875) this subject was considered by the supreme court of Massachusetts. *Old South Society* v. *Crocker*, 119 Mass. 1, 22. There a trust was declared, the beneficiaries of which were the grantees themselves, with such as they should associate to themselves, "their heirs and successors." It was said these last words "indicated that the grantor contemplated a permanence of association of the cestuis que trust, and intended to convey the fee in the land." This conveyance was for the purpose of maintaining public worship by a proposed religious society, and yet the court held it not to be a public charity, and, as we have seen, said that the fee was conveyed. See, also, *Attorney General* v. *Federal St. Meetinghouse*, 3 Gray, 50; *Saltonstall* v. *Sanders*, 11 Allen, 464; *Attorney General* v. *Trinity Church*, 9 Allen, 422; *Wells* v. *Heath*, 10 Gray, 17.

In *City of Bangor* v. *Rising Virtue Lodge*, 73 Me. 428, it was held that "the distinctive characteristics of a public charity are that its funds are derived from gifts

and devises, and not from fees, dues, and assessments, and that it is not confined to privileged individuals, but is open to the indefinite public." See, also, other cases cited by counsel, as follows: *Kent* v. *Dunham*, 142 Mass. 216; *Newcomb* v. *Boston Protective Dept.*, 151 Mass. 215. The corporation was held to be a private corporation, and not public, and that it was not a public charity.

In the present instance the fund was derived from members mainly. Whatever its source, it became the property of this corporation. Before its dissolution, it attempted to dispose of it to certain charitable uses, but failed, whereby the legal title remained in the trustees. No one claims that the trustees should hold for their own benefit. Had not the corporation been dissolved, we cannot doubt that it could recover the fund, and devote it to its own purposes, as provided in section 6 of its own organic act. But it was dissolved, and the attempt of its surviving members to reclaim the fund (to which the trustee has no just claim) is met by denial upon the ground that they have no claim upon it, for the reason that it had escheated to the State.

An escheat must rest upon the fact that, the trust failing, there is no one lawfully entitled to the fund. It is true that the corporation no longer exists, but its members and their representatives remain. The doctrine that upon the dissolution of a corporation its real estate reverts, and its personal property goes to the crown, is a hard doctrine that courts of equity have power to relieve against, and we think that such a rule is not generally applied in this country to corporations in which the members had a pecuniary interest. See *Tinkham* v. *Borst*, 31 Barb. 411; *Bacon* v. *Robertson*, 18 How. 480; *Broughton* v. *Pensacola*, 93 U. S. 269; *Towar* v. *Hale*, 46 Barb. 361; 10 Cyc. 1327; 9 Am. & Eng. Enc. Law (2d Ed.), p. 608.

Our examination of the authorities leads us to the opinion that the doctrine of the common law, odious at home, and reluctantly followed in this country, in some instances had a doubtful origin, and, as said in 2 Kent's Commentar-

ies, 307, note *b*, should be considered obsolete. It is a new question in this State, and we feel justified in denying its application here. Statutes implying legislative disapproval of it, and providing against its consequences by authorizing the winding up of the affairs of defendant corporations, were early passed, and are of wide application. We feel justified in saying, therefore, that the fund in the hands of the trustees remained in equity the property of the corporation, and upon its dissolution its existing members succeeded to its rights. They and their representatives are entitled to have this fund divided between them. The persons entitled to share in this fund are those recognized as members at the time of dissolution who are now living, and the personal representatives of such members as have since died; in other words, those of the 116 members who participated in the division in 1887 who now survive, and the personal representatives of those said 116 who have deceased since the dissolution of the corporation.

We think that the trustees should be allowed a reasonable sum for their services since November 10, 1903. They should also be allowed their reasonable disbursements in relation to the administration of the trust, and a reasonable allowance should be made to them for the payment of their counsel, taking into consideration such sums as have been already paid.

The decree is reversed, a decree for complainants entered, and cause remanded, with direction to the circuit court to make distribution in accordance with the opinion. The costs of the appeal will be paid from the fund.

The other Justices concurred.