[Civ. No. 14938.   First Dist., Div. One.   Sept. 28, 1951.]

PENINSULA PROPERTIES COMPANY, LTD., et al., Appellants, v. COUNTY OF SANTA CRUZ et al., Respondents.

Carlyle Miller for Appellants.

Edmund G. Brown, Attorney General, E. G. Benard, Deputy Attorney General, June D. Borina, District Attorney of Santa Cruz County, Wyckoff, Gardner, Parker & Boyle and Lucas, Wyckoff & Miller for Respondents.

PETERS, P. J.—There are pending before this court a petition for a writ of supersedeas filed by the plaintiffs, and motions by defendants to dismiss certain appeals taken by plaintiffs. The key question presented is whether a judgment upholding certain tax deeds to the state and entered by the trial court on January 9, 1951, is or is not an appealable judgment. This turns upon whether that judgment is an interlocutory judgment, or a final judgment within the meaning of section 963 of the Code of Civil Procedure.

The controversy involves some 1,100 parcels of land in Santa Cruz County. The plaintiffs have paid none of the special assessments levied against the lots since 1935, and have paid no county taxes since about 1940. In the year 1940 practically all of the parcels were deeded to the state for nonpayment of the special assessments. Thus, since 1940, the state has had absolute title to the lots, which title was subject to defeasance if the former owner exercised his privilege of redemption in the manner provided by statute. (*People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897].)

Ever since 1935 the plaintiffs have disputed the validity of the special assessments. In 1946 they commenced an action, primarily aimed at testing the validity of these assessments, and the sales and tax deeds based thereon. The complaint is entitled "Complaint to Determine Validity of Tax Sales and Tax Deeds, and for Declaratory Relief," and states five causes of action.

The first cause of action, and the main one here involved, was brought pursuant to chapter 5.7 of part 6 of division 1 of the Revenue and Taxation Code, and challenges the validity of the tax deeds issued to the state. In addition to the county and state, various public taxing agencies and revenue districts were joined as defendants pursuant to the provisions of section 3623 of the Revenue and Taxation Code.

The second, third and fourth causes of action sought to determine the validity of certain tax deeds issued to third party purchasers at tax sales. The third cause of action was dismissed prior to trial.

The fifth cause of action was for declaratory relief, the plaintiffs praying for a judgment declaring their rights and duties and the rights and duties of the public bodies and officials involved in reference to:

A. A certain contract between Peninsula Properties Company, one H. Loomis, and the county of Santa Cruz;

B. The existence of liens upon many of the parcels here involved arising out of the levy in 1930 of special assessments thereon under the County Improvement Act of 1921 (Stats. 1921, p. 1658, chap. 872), and in the manner provided by the Improvement Bond Act of 1915 (Stats. 1915, p. 1441, chap. 733);

C. The validity of the sales to the state and the tax deeds issued to it by reason of the failure of plaintiff to pay the installments on the special assessments;

D. An accounting of the redemption fund created by the county treasurer for the payment of the bonds.

Answers and cross-complaints of the various defendants were filed in which the state sought to quiet its titles based on the tax deeds, and the individual defendants sought to quiet their titles to the parcels conveyed to them. In addition, the state, by cross-complaint and pursuant to the provisions of sections 3651 and 3652 of the Revenue and Taxation Code, sought to recover rents, issues and profits allegedly taken by plaintiffs from some of the properties since they were deeded to the state.

The trial was had partly in 1948 and partly in 1950. The trial judge then rendered a memorandum opinion in which he stated that he was of the opinion that all of the tax proceedings involved were regular and valid; that all of the causes of action were barred by the statute of limitations; that any defects in the delinquency proceedings were cured by certain tax validation statutes; and that the state, on its cross-complaint, was entitled to a judgment against plaintiffs for $32,621.22 for rents received by plaintiffs from the tax-deeded lands. Defendants were directed to prepare findings in accordance with this opinion. The opinion is dated September 13, 1950. Findings of fact, conclusions of law and the judgment were signed on January 2, 1951, and the judgment was filed January 9, 1951. The judgment is entitled: "Interlocutory Judgment on the First Count of the Complaint Pursuant to section 3627 Revenue and Taxation Code and Final Judgment on Cross-Complaints and Second, Fourth and Fifth Counts of the Complaint."

On January 5, 1951, plaintiffs secured from the trial court, ex parte, an order staying execution of these judgments for 10 days after the determination of any motion for a new trial that might be filed. The main purpose of this stay was to try to extend the period in which plaintiffs could redeem, because the judgment, in disposing of the first cause of action, provided, as required by section 3627 of the Revenue and Taxation Code, that plaintiffs had 90 days from the date of the entry of the judgment to redeem, and that, if they did not redeem within that period, the right of redemption was forever lost. This 90-day period would expire on April 9, 1951.

On February 8, 1951, plaintiffs served a notice of intention to move for a new trial. On March 13, 1951, the plaintiffs, again ex parte, secured from the trial court an amended order purporting to stay execution which specifically provided that the period of redemption should not terminate until 30 days after the determination of the motion for a new trial. The defendants thereupon filed a notice of motion for an order vacating this amended order staying execution.

On March 30, 1951, plaintiffs filed exceptions to the findings, a motion to vacate the judgment, a motion for an order directing the manner of redemption, a motion for an order directing segregation on partial redemption of property, and notice of motion for the appointment of a referee. A hearing was had on these various matters and all of them, including the motion for a new trial, were denied on April 6, 1951.

On April 7, 1951, the plaintiffs filed their notice of appeal from the judgment of January 9, 1951, and from the order denying the motion for a new trial, from the order refusing to vacate the judgment, from the order denying plaintiffs' motion for an order directing the manner of redemption, and from the order denying plaintiffs' motion for an order directing segregation on partial redemption of property.

On this same day—April 7, 1951—the county auditor informed plaintiffs that the period of redemption would expire on April 9, 1951, and that he had been advised that the amended order staying execution beyond that date was void, and for that reason would be disregarded.

On April 9, 1951, plaintiffs filed this petition for a writ of supersedeas, requesting this court to suspend generally the enforcement of the judgment during the hearing of the pending appeals, and specifically to extend their period of redemption pending the hearing of said appeals. This court,

after an informal hearing with all counsel, issued an order to show cause why such a writ should not issue, an order préserving the status quo, and an order staying all proceedings in the action (with the exception of the money judgment granted the state) until the final determination of the order to show cause.

On May 7, 1951, defendants filed a notice of motion to dismiss the appeals of plaintiffs from the interlocutory decree upon the first cause of action, and from the orders denying the four motions above enumerated. It is the theory of these motions that the four orders and the interlocutory decree are not appealable. It will be noted that defendants do not seek to dismiss the appeals from that portion of the judgment disposing of the second, fourth or fifth causes of action, nor do they seek to dismiss the appeal from the money judgment secured by the state on its cross-complaint.

The proceedings on the writ of supersedeas and the motions to dismiss have been consolidated for consideration.

The basic question involved is whether the so-called "interlocutory" judgment on the first cause of action is an appealable judgment. Plaintiffs urge that, regardless of its designation, the judgment is, in fact, a final judgment and therefore appealable. The judgment provides the following:

1. That plaintiffs take nothing by their action;

2. That each one of the tax deeds is valid in all respects; that the delinquent taxes and assessments upon the basis of which the deeds were executed are valid in all respects; and that the various funds of the county of Santa Cruz out of which advances were made to the 2-B Bond Redemption Fund are entitled to be first reimbursed out of any surplus that may remain in that fund;

3. That the title to the described properties is quieted in the State of California; that "within ninety (90) days from the date of this Interlocutory Judgment, if the right or privilege of redemption has not been previously terminated, redemption may be made with the usual penalties and costs provided by law; but if redemption is not so made within said ninety (90) day period, then all further right or privilege of redemption shall stop, cease and terminate as to all of said real property, whereupon a final judgment shall be entered which shall recite whether or not said real property has been redeemed within said ninety (90) day period, and as to any of said real property not so redeemed, shall provide that all right or privilege of redemption has been terminated; that

defendant State of California is the owner in fee simple absolute thereof"; and that plaintiffs be perpetually enjoined from claiming any interest in said property;

4. That the state have judgment against plaintiffs and cross-defendants in the sum of $32,621.22, together with $8,296.91 interest, and costs;

5. That the two individual defendants, Hall and Anderson, have judgment against plaintiffs that said defendants are the owners in fee of certain described property, with a perpetual injunction against plaintiffs, as above.

If this judgment, insofar as it deals with the first cause of action, is interlocutory in nature it is admittedly not appealable. ■ No appeal can be taken from an interlocutory order or judgment unless the order or judgment is designated by statute as being appealable. (*Title Ins. & Trust Co.* v. *California etc. Co.,* 159 Cal. 484, 486 [114 P. 838]; *Johnson* v. *Solomons,* 124 Cal.App. 43, 45 [12 P.2d 140]; *Krotzer* v. *Clark,* 178 Cal. 736, 738 [174 P. 657].) Section 963 of the Code of Civil Procedure, after providing that an appeal may be taken from "a final judgment entered in an action," then lists certain orders, including certain interlocutory orders, that are appealable. Admittedly, the type of judgment disposing of the first cause of action is not there listed. This portion of the judgment is appealable only if it is "a final judgment" within the meaning of section 963 of the Code of Civil Procedure. So far, the parties agree.

■ By section 3627 of the Revenue and Taxation Code, the Legislature has designated the portion of the judgment here involved as being "interlocutory." That section appears in chapter 5.7, division 1, part 6, of that code which is entitled "Taxpayer's Action to Contest the Validity of Tax Sale or Tax Deed." Section 3627 provides: "If the taxes and the tax deed, if any, are determined to be valid in all respects, the court shall enter its interlocutory decree, quieting the title of the State under the tax deed. If property tax sold but not tax-deeded, the court shall enter its interlocutory decree determining the validity of the taxes. Within 90 days thereafter, if the right or privilege of redemption has not been previously terminated, redemption may be made with the usual penalties and costs. If redemption is not made within such period all further right or privilege of redemption shall thereupon cease and terminate as to all tax-deeded property. The final decree shall recite whether or not the property has been redeemed within the 90-day period, and if not so re-

deemed, shall provide that all right or privilege of redemption has been terminated as to tax-deeded property."

Admittedly, the trial court entered the judgment disposing of the first cause of action under this section. It will be noted that the section describes the judgment as an "interlocutory" one, and further, that nothing is said in the section about that judgment being appealable. In this connection section 3627 is to be contrasted with section 3631, another section in the same chapter of the Revenue and Taxation Code. That section provides: "After all necessary steps ordered by the court have been taken, the court shall render its interlocutory decree requiring the payment, within six months after the interlocutory decree becomes a final judgment, of the amount of taxes, computed as of the date of payment, without interest, penalties or costs thereon. The interlocutory decree shall declare that if payment is not made within such six months period, a final decree shall be rendered, quieting the State's title under the tax deed as to tax-deeded property. As to tax sold property which has not been tax-deeded, the interlocutory decree shall declare that, if payment is not made within such six-month period, a final decree shall be rendered, determining the correct amount of taxes due and no redemption shall be made without interest, penalties or costs thereon. *This interlocutory decree is an appealable judgment.* No costs shall be awarded to either party in any action under this chapter. . . ." (Italics added.)

Section 3627 applies to the situation where the taxpayer loses his case in the superior court, while section 3631 is applicable where the taxpayer has been successful in the trial court in securing a ruling that the tax sale or deed is invalid. Both statutes expressly provide that, at the conclusion of the trial, a judgment, designated by the Legislature as an "interlocutory" judgment, shall be entered, to be followed by the entry of a "final" judgment. Where the trial court has upheld the validity of the tax sale or deed then, under section 3627, the taxpayer is given 90 days from entry of the "interlocutory" judgment to redeem. At the end of this 90 days, if the property is not redeemed, the right of redemption is lost, unless the taxpayer can secure a reversal of the "final" judgment then entered. After the 90 days has expired, and pending the appeal, the taxpayer may not redeem. But if the taxpayer is successful in securing an "interlocutory" decree to the effect that the tax sale or deed is invalid, then, under section 3631, the "interlocutory"

decree shall set forth the true amount owed and the taxpayer may, within six months "after the interlocutory decree becomes a final judgment," redeem by paying this amount, without interest, penalty or costs. It is expressly provided that this interlocutory decree is appealable.

The statutes involved appear to be quite clear in their wording. The Legislature designated the decrees to be entered as "interlocutory" and then, to make its meaning and purpose clear, provided that the interlocutory entered under section 3631 should be appealable. Thus, it would appear that the Legislature intended and provided that the interlocutory decree entered under section 3627 should not be appealable.

If this be the proper construction of the statutes that is the end of this phase of the case. ▮ If the statute is clear the courts should enforce the legislative intent as disclosed by the statutes. ▮ The courts cannot, or at least should not, through the guise of interpretation, make an order appealable that the Legislature intended and provided should not be appealable. ▮ It is for the Legislature to determine whether an order shall be deemed interlocutory or final, whether an interlocutory order shall be appealable, and at what stage of the proceedings it should become appealable. As long as the ultimate right of review is preserved, these are matters of legislative and not judicial concern. As this court stated in *Leplat* v. *Wiles,* 60 Cal.App.2d 83, 86 [140 P.2d 43] : "Whether an order or judgment is appealable, and at what stage of the proceedings the order or judgment becomes appealable, are matters of legislative determination. The Legislature having spoken, and there being no room for interpretation, the appellate courts, through the guise of interpretation, should not attempt to amend the statute by judicial mandate. The clarification required must come through the legislative and not through the judicial process."

The plaintiffs concede that the law is as set forth in the Leplat case. But they strenuously urge that section 3627 is ambiguous and must be interpreted. They argue, ably and at length, that the mere designation of the judgment as "interlocutory" in the statute is not conclusive on the courts, and that, regardless of such designation, it is for the courts to determine, from the substance and effect of the decree, whether it is a final or an interlocutory decree. They then argue that, in substance and effect, this so-called interlocutory

decree is a final decree and not interlocutory. At least, so it is urged, an ambiguity exists. Based on these premises it is then argued that it is illogical, unjust, unfair and inequitable to preserve the right of redemption where the state is the loser and appeals, and to make that decree appealable, but to cut off the right of redemption where the taxpayer is the loser, and to make that decree not appealable. None of these arguments is sound.

It is undoubtedly the law that where a *trial court* designates a particular order or judgment as "interlocutory," such designation is not conclusive, and that an appellate court must determine from the substance and effect of the order or judgment whether it is final or interlocutory. The label placed upon the order or judgment by the trial court is not conclusive. This principle was stated in *Zappettini* v. *Buckles,* 167 Cal. 27 [138 P. 696], and then the court continued (p. 33) : "The general rule applicable in determining whether a judgment is final or merely interlocutory, as deducible from the authorities, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only. Mr. Freeman in his work on Judgments says that if after a decree has been entered, no further questions can come before the court except such as are necessary to be determined in carrying the decree into effect, the decree is final." This basic principle has been stated in many cases. (See *Phillips* v. *Cleaver,* 82 Cal.App.2d 751, 756 [187 P.2d 80] ; *Caminetti* v. *Imperial etc. Life Ins. Co.,* 54 Cal.App.2d 514, 516 [129 P.2d 432] ; *Lyon* v. *Goss,* 19 Cal.2d 659, 669 [123 P.2d 11]—see p. 670 citing many cases.)

It is very doubtful that the rule of these cases is applicable to the problem here presented. Here it is the *Legislature* that has designated a particular judgment as interlocutory, and it is the *Legislature* that has used that term in opposition to "final." Moreover, the Legislature has, in one section, expressly provided that one type of interlocutory judgment shall be appealable, and in another related section failed to so provide. It is one thing to say that, where a trial court has rendered what is in substance and effect a final judgment, it cannot change the nature of the judgment by labelling it "interlocutory," but quite another thing to say that, where the Legislature declares a particular decree to be interlocutory and fails to provide that it shall be appealable, the courts can

say that in substance and effect the decree is final and therefore appealable. ■ Since it is for the Legislature to determine at what stage of the proceedings the judgment shall become appealable, it would appear clear that when the Legislature has expressly provided for the entry of an "interlocutory" decree and for the entry of a "final" decree, it has necessarily declared that the appeal shall be from the final and not from the interlocutory decree. That this must have been the intention of the Legislature is made quite clear by the provisions of section 3631, because there it provided for the entry of an interlocutory and then for the entry of a final decree and expressly provided that the interlocutory should be appealable. Thus, even if the so-called "interlocutory" entered pursuant to section 3627 had the attributes of what would normally be a final decree, since the Legislature has clearly indicated that the appeal from a decree entered pursuant to section 3627 should be from the decree designated by it as "final" and not from the decree designated by it "interlocutory," that legislative determination is binding upon the courts.

■ Even if the rule under discussion were applicable to a decree described by the Legislature as interlocutory, it is quite doubtful if the decree here involved has sufficient attributes of finality to require a holding that it is a final decree. Plaintiffs emphasize that the decree is supported by findings of fact and conclusions of law, claim that it determines all issues, point out that it quiets title in the state, and decides the obligations of costs. They urge, therefore, that the decree determines every legal issue before the court, and that it leaves no judicial act to be performed by the court. The plaintiffs argue as follows: While the final decree must recite whether or not the property has been redeemed within the 90 days, that is a mere collateral independent matter not at all involved in the issues presented to the trial court. The chapter of the Revenue and Taxation Code involved gives the taxpayer the right to challenge the validity of tax sales or deeds—that is the issue litigated and the issue that will be presented on the appeal. The right of redemption, say plaintiffs, is not the issue litigated. The fact and manner of redemption are merely collateral to the main appeal. These arguments are not convincing. The Legislature saw fit to grant the privilege of redemption for 90 days after the entry of the interlocutory decree, and saw fit to require the final decree to ascertain and determine whether redemption had in fact

been made. While it is true that the interlocutory determined that the tax sales and deeds were valid, and quieted the titles in the state, the force and effect of such adjudication was conditioned upon the expiration of the 90-day period, and the entry of a final judgment determining whether the properties had or had not been redeemed. The interlocutory, of course, could not be enforced during this 90-day period. During that period the effectiveness of the interlocutory was suspended. Thus, whether the taxpayer has or has not redeemed is a basic issue to be determined in the final decree. Redemption is not collateral to the main issue but an integral part of it, and made so by statute. As was said in *City of San Diego* v. *Alpha Securities Corp.*, 99 Cal.App.2d 246, 249 [221 P.2d 770]:

"An examination of the provisions of this judgment [giving a taxpayer the right to redeem] leads us to conclude that it is not res adjudicata as to the issues in the instant action and is not a final judgment. It is interlocutory in substance and effect. [Citing three cases.]

"It cannot be determined from the judgment whether the taxpayer would elect to redeem the property under its terms and obviously the title to the lot here involved was not finally adjudicated by the decree." That is precisely true of the present case. Of course, determining whether a valid redemption has or has not been made is a judicial and not a mere ministerial function.

The legal situation is somewhat comparable to that where an action for dissolution and accounting is filed, and the trial court enters its judgment determining all of the issues between the parties except the accounting, and orders an accounting by a referee or the court. Such a judgment is interlocutory and not final, and therefore nonappealable. (*David* v. *Goodman*, 89 Cal.App.2d 162 [200 P.2d 568]; *Most Worshipful Lodge* v. *Sons etc. Lodge*, 91 Cal.App.2d 582 [205 P.2d 722].) Here all the problems involved in determining whether redemptions have been legally made must be determined on the final decree. That these may be complex and certainly may involve judicial questions is demonstrated by the several motions in connection therewith filed by plaintiffs.

We are not impressed with the argument that the statute so construed is illogical, unfair or inequitable. Plaintiffs emphasize and reiterate that the effect of holding that the decree entered pursuant to section 3627 is interlocutory and nonappealable is to cut off the taxpayer's right of redemption

90 days after entry, and to cut off such right during the period of the appeal taken from the final judgment. To thus cut off the right of redemption while plaintiffs are trying to appeal from the judgment holding the tax deeds to be valid appears to them to be most unfair and unjust. This unfairness is accentuated, according to plaintiffs, by the provisions of section 3631 preserving the right of redemption during the period an appeal by the state is pending.

Such arguments do not tell the entire story. Plaintiffs may appeal from the final judgment adverse to them. They may challenge the correctness of the ruling that the tax sales and deeds were valid. If they are successful on that appeal, then a judgment under section 3631 must be entered, and the taxpayer may redeem during the period provided in that section. It must be remembered that we are dealing with delinquent taxpayers. In the instant case the plaintiffs have refused to pay special assessments levied against their property for a period of 16 years, and have failed to pay county taxes for 11 years. The amount claimed to be due is close to $200,000. The properties have been not only sold to the state, but also deeded to the state because of these delinquencies. These deeds, most of which are dated 1940, transferred absolute title to the state, subject only to whatever privilege of redemption the Legislature might see fit to grant. After the properties were deeded to the state in 1940 the state could have sold any parcel to third persons, and this would have terminated the right of redemption and left the taxpayer only the right to challenge the validity of the deed. Under the provisions of section 3627 the state has adopted a somewhat similar procedure to terminate the right of redemption, but to preserve the right to challenge the validity of the deed.

The practical effect of sections 3627 and 3631 is this: the state has granted to the taxpayer the privilege of bringing an action to test the validity of tax sales and deeds without first paying the taxes under protest. These sections permit the state to be sued for such purposes. But by these sections the state has placed a statutory limitation on the consent thus granted. The state, by this legislation, has, in effect, said to the taxpayer: ''You did not pay your taxes or assessments; you suffered them to go delinquent, then to sale, and then to deed. You question the validity of the sale and deed. It is fair and just that some proceeding should exist whereby you can challenge such sales and deeds without first paying the taxes or assessments. For that reason we, the state, will con-

sent to be sued. We will grant to you, the taxpayer, the privilege of bringing an action against the state for these purposes. While this action is pending in the trial court we will continue your privilege of redempton. If the trial court determines that the sales and deeds are valid, then, under section 3627, we will even continue your right of redemption for ninety days after the entry of the interlocutory, but at the end of ninety days your privilege of redemption shall terminate. You may appeal from the final judgment, and, if successful on that appeal, then under section 3631 your privilege of redemption shall be revived for the period there provided. But if you lose that appeal your right of redemption has expired. On the other hand, if you win in the trial court and you are successful in securing a ruling that the tax sales and deeds are invalid, and the defect is curable, we, the state, will give you a chance to pay your just taxes without interest, penalties or costs, and we will give you six months after decision to make such payment.''

This is not treating the taxpayer unfairly. He has had a long time to pay, and has had the privilege of redeeming for even 90 days after the entry of the interlocutory. If the taxpayer does not like this setup he can always refrain from instituting the action. But if he elects to use this procedure he must do so on the state's own terms.

The history of these sections strongly suggests that the interpretation here given to them is the proper one. Chapter 5.7, part 6, division 1 of the Revenue and Taxation Code was first enacted in 1941. Prior to that time there was no procedure by which the taxpayer might sue the county or state to have the validity of taxes or assessments against his property determined without first paying such taxes or assessments. He could, of course, pay the taxes or assessments under protest and sue for a refund. Or he could wait until the tax lien had been foreclosed and the property deeded to a third person purchaser. He could then contest with that person, by quiet title action usually, the validity of the tax proceedings or deed. If the taxpayer chose this last procedure his right of redemption was terminated upon the sale to a third person and he could only have the property restored to him if he was successful in his litigation with that third person. Pending an appeal in that litigation he had no right to redeem.

In 1937 the Supreme Court decided the case of *Otis* v. *Los Angeles County*, 9 Cal.2d 366 [70 P.2d 633]. That decision

had the legal effect of invalidating most tax deeds in Los Angeles County. This decision resulted in several pieces of legislation. In the extra session of 1938 the Legislature first enacted the present provisions of chapter 5, part 6, division 1 of the Revenue and Taxation Code as part of the Political Code (Ex. Sess., 1938, chap. 23, p. 110), granting to the *state* the privilege of commencing an action to determine the validity of tax deeds. This procedure apparently was not entirely successful, because in 1941 the Legislature, by an urgency measure, added chapter 5.7 to the Revenue and Taxation Code granting to the taxpayer the privilege of bringing an action to have determined the validity of tax deeds. (Stats. 1941, chap. 293, p. 1436.) In 1943, also by an urgency measure, the scope of the remedy was enlarged to make it available to tax sales as well as to tax deeds. (Stats. 1943, chap. 709, p. 2463; see *Wong Him* v. *City & County of San Francisco,* 87 Cal.App.2d 80 [196 P.2d 135].) The statements of fact which the Legislature recorded in support of both the 1941 and 1943 urgency measures are substantially the same. The 1941 statement, after first reciting that numerous tax levies have been held to be invalid, states: ''Many taxpayers are willing to pay these delinquent taxes and to redeem properties from tax sale if a quick and immediate remedy can be afforded for so doing. No such remedy now exists which has met with the approval of title companies and attorneys for public bodies. It is estimated that large amounts of delinquent taxes, necessary to the continued welfare of the fiscal systems of local governments, will be immediately paid upon the adoption of a quick and simple remedy by which such tax liabilities can be determined in an action brought by the taxpayer. It is essential that such remedy be adopted and become effective at the earliest possible time.''. (Stats. 1941, at p. 1440.)

The 1943 statement was of the same tenor. (Stats 1943, at p. 2465.)

As part of this same general tax legislation the law-making body also passed several tax validating acts. (Stats. 1943, chap. 458, p. 1993; Stats. 1945, chap. 1134, p. 2176; Stats 1947, chap. 605, p. 1615; see, generally, *Wall* v. *State of California,* 73 Cal.App.2d 838 [167 P.2d 740]; *Elbert, Ltd.* v. *Nolan,* 87 Cal.App.2d 24 [196 P.2d 88]; *Howard* v. *Judson,* 86 Cal.App.2d 128 [194 P.2d 138]; *Barrett* v. *Brown,* 26 Cal.2d 328 [158 P.2d 567].)

This background suggests, and the whole tenor of chapter 5.7 of the Revenue and Taxation Code demonstrates, that there was no legislative inadvertence in providing that there should be no appeal from an interlocutory decree under section 3627, while expressly providing for such an appeal under section 3631. The legislative history shows a legislative intent and policy of fixing definite periods for terminating the privilege of redemption. As already pointed out, the delinquent taxpayer had the absolute right of redemption until deeds were issued to the state in 1940. The state could have cut off, by appropriate legislation, the privilege of redemption thereafter. But the state saw fit to grant the privilege of redemption thereafter until the property was sold to a third person, or until the taxpayer saw fit to institute an action under chapter 5.7, and even then granted him the privilege of redemption while that action was pending in the trial court and for 90 days after a decision upholding the tax sale or deed. But where the tax sale or deed is held by the trial court to be invalid, the Legislature saw fit to allow the state to appeal from the interlocutory and to preserve the privilege of redemption in the meantime. Such procedure is fair and logical, and is neither discriminatory nor inequitable.

Such interpretation is in accord with the modern policy adopted by the Legislature and courts towards the delinquent taxpayer. The early cases expressed great concern over the so-called rights and privileges of the delinquent taxpayer, and the courts leaned over backwards to preserve these rights and privileges. The result was that some taxpayers, on questionable technicalities, were able to avoid their just obligation to pay their taxes and assessments, thus increasing the burdens of those who did pay. These cases, many of them, overlooked the duty of the taxpayer to assume his just proportion of the costs of government. The modern cases and statutes have remedied this oversight. While preserving the right and the privilege of redemption for reasonable periods, these cases and statutes recognize that, in fairness to the other taxpayers and to the government, these rights should have definite termination points. That is the philosophy of section 3627. The Legislature has the constitutional power to determine, at least after property is tax-deeded to the state, when the privilege of redemption should terminate. Once the Legislature has spoken, the courts should not try to extend the period of redemption by forced, technical and unreasonable constructions of the applicable statute.

For these reasons the purported appeal from the interlocutory judgment of January 9th must be dismissed, that judgment not being appealable.

The motion to dismiss is also directed to appeals taken from the order denying the motion for a new trial, from the order refusing to vacate the judgment, from the order denying the motion for an order directing the manner of redemption, and from the order denying plaintiffs' motion for an order directing segregation on partial redemption of property. Plaintiffs concede that the order denying the motion for a new trial is not appealable and must be dismissed.

As to the other orders, it is their main theory that these are special orders after final judgment, and therefore appealable under section 963, subdivision 2, of the Code of Civil Procedure. The ''final'' judgment mainly relied upon is the judgment already held in this opinion to be interlocutory and not final. This being so, such orders are not special orders after final judgment, but orders entered before final judgment. As such, they are not separately appealable but reviewable on appeal from the final judgment under section 956 of the Code of Civil Procedure. If these orders, on such review, are found to have been in error, the final decree would have to be reversed and the parties would then have the legal right to proceed from the point where error, if it exists, first came into the proceeding. (*Steen* v. *City of Los Angeles,* 31 Cal.2d 542, 547 [190 P.2d 937].)

The plaintiffs also seek to defend the appealability of these orders on the theory that the judgment in disposing of the fifth cause of action—declaratory relief—is final, and these orders, so it is claimed, were entered after that judgment was entered. Therefore, so it is contended, these orders are special orders after that final judgment and appealable. The argument is unsound. Counsel cannot, by joining an action for declaratory relief with one brought under chapter 5.7 of the Revenue and Taxation Code, make the interlocutory judgment appealable. The questioned orders were all directed to securing an interpretation of that portion of the interlocutory judgment dealing with redemption. They cannot be distorted into orders seeking an interpretation of the declaratory portions of the judgment.

For the foregoing reasons the petition for supersedeas is denied and the motion to dismiss the appeals granted. The stay order heretofore issued is continued in effect until when,

as, and if this opinion becomes final, in which event it is terminated.

Bray, J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 26, 1951. Schauer, J., voted for a hearing.