[Civ. No. 13066. First Dist., Div. Two. Aug. 14, 1946.]

In re Application of LA SOCIETE FRANCAISE DE BIEN-FAISANCE MUTUELLE (a Corporation), for a Judgment Establishing the Fact of the Deaths of GERMAIN POUCHAN and LOUISE POUCHAN, His Wife. LA SOCIETE FRANCAISE DE BIENFAISANCE MUTUELLE (a Corporation), Appellant, v. THOMAS H. KUCHEL, as State Controller, etc., Respondent.

P. A. Bergerot and A. P. Dessouslavy for Appellant.

James W. Hickey, Raymond G. LaNoue and Charles J. Barry for Respondent.

NOURSE, P. J.—The plaintiff appeals on the judgment roll from an adverse order holding it subject to an inheritance tax upon a gift of real property. The trial in the

superior court was had upon a stipulation of facts which incorporated the report of the inheritance tax appraiser from which it appears that in February, 1936, Germain Pouchan and his wife Louise conveyed the real property to the corporation reserving unto themselves a life estate upon an agreement executed by all parties that the Societe would admit the grantors to the hospital operated by it, and known as the French Hospital, as life boarders with all the privileges of hospital care and treatment together with board and maintenance. It was stipulated "That there were no conditions or restrictions in or attached to the said grant of the remainder of said property to the said corporation, and it was free to devote such property or its proceeds to such use as it saw fit, at or upon the death of the survivor of said grantors. . . ."

The conditions of the grant were fully executed. The grantors moved to the hospital and were cared for as stipulated. Louise Pouchan died in November, 1937. Germain died in December, 1939. The value of the property conveyed was appraised at more than thirteen thousand in excess of the accommodations and services rendered the grantors upon which a tax of $971.86 was declared by the order from which this appeal is taken.

▮ The appellant argues that it is exempt from any tax upon a gift of this nature under the provisions of section 6(1) (b) of the Inheritance Tax Act. (Stats. 1935, p. 1274; Deering's Gen. Laws, 1935 Supp., Act 8495.) The material portion of the section, as it stood at the time of the transfer, reads:

"(b) All property transferred to societies, corporations and institutions now or hereafter exempted by law from taxation, or to any public corporation, or to any society, corporation, institution, or association of persons engaged in or devoted to any charitable, benevolent, educational, public, or other like work. . . ." It is appellant's theory that since the section was amended in 1941 to insert the word "exclusively" between the words "persons" and "engaged" the Legislature in 1935 must have intended to exempt any corporation or person who engaged in any charitable function no matter how small. The argument goes beyond all reasonable bounds as it would require an interpretation of the section exempting from the tax every corporation, society or institution which contributed to any charity in the course of

its operation as a purely business and financial institution. The appellant has heretofore litigated the question whether it is a business or a charitable institution and the courts have uniformly held that it is not charitable. In *Brown* v. *La Societe Francaise*, 138 Cal. 475, 477 [71 P. 516], the Supreme Court, in 1903, held that the Societe was "merely an association for mutual profit or benefit, similar in its essential nature to other societies formed for such puposes." In *Estate of Dol*, 182 Cal. 159 [187 P. 428], the Societe Francaise . . . De Los Angeles, a counterpart of the San Francisco organization, contended that it was not a charitable institution where a gift was made to it within 30 days of the death of the testator. The Supreme Court held that the society was not a charitable or benevolent society within the meaning of section 1313 of the Civil Code and rested the decision on the Brown case. In *La Societe Francaise* v. *California Employment Commission*, 56 Cal.App.2d 534 [133 P.2d 47], a proceeding to determine the liability of the society for contributions under the California Unemployment Insurance Act (Stats. 1935, p. 1226; 3 Deering's Gen. Laws, Act 8780d) the court fully reviewed the manner of organization and the operation of the Societe and held that while it (p. 544) "performs certain charitable functions, it is in fact an association for the mutual advantage of the members who have paid admission fees and continue to pay dues."

This disposes of the contention that the appellant is a society engaged in or devoted to charitable work and as such exempt from the taxing provisions of the act.

But the appellant argues that, assuming that it is not a charitable corporation this particular transfer was "for a charitable purpose" and so exempt from the tax. It relies upon cases holding that a gift or a transfer of property may be made for a charitable purpose to either a charitable or noncharitable institution. The authorities are discussed at length in *Estate of Henderson*, 17 Cal.2d 853 [112 P.2d 605], and nothing need be added here except that notation should be made of the court's comment on the failure of the court in *Estate of Dol* (*supra*) to consider the difference between the cases involving the charitable status of the institution and those involving the charitable nature of the particular gift. The rule of the decision, insofar as it relates to the question presented here, is found in the paragraph commencing on page 859 and reading:

"If a group of individuals agree to contribute equal amounts into a fund to be used for the benefit of all, such a group may well be said to be non-charitable in nature because each individual is providing only for his own welfare and does not intend to make a free contribution toward the assistance of others. If an outsider, however, receiving no benefits from the organization, makes a gift to it, that gift may well be a charitable one if the members of the organization are sufficiently numerous and it is organized for a purpose beneficial to society such as providing for medical assistance to its members. Such a donor has the charitable purpose of assisting those members of a large group who become sick, without any benefit to himself, and the gift thus may be a charitable one."

It should be noted that the court said that such a gift "may" become a charitable one. But the parties stipulated: "That there were no conditions or restrictions in or attached to the said grant of the remainder of said property to the said corporation, and it was free to devote such property or its proceeds to such use as it saw fit, at or upon the death of the survivor of said grantors." The grantors were not "outsiders." The transfer was expressly made for their own benefit and if one or both had continued to live longer they might have consumed all the benefits of the transfer. Whatever was left after payment for their care and medical treatment the corporation was free to use for its own benefit—free from any restrictions. It was therefore an unrestricted gift to a noncharitable corporation limited only by the condition that such portion of the gift as became necessary should be expended solely for the benefit of the grantors.

Appellant argues that it should be exempted from the tax under the provisions of the statute exempting associations engaged in or devoted to "public, or other like work." Cases are cited from other jurisdictions which hold certain types of hospitals to be "public" charities. It would serve no useful purpose to cite them. Long before the original Inheritance Tax Act was passed in 1935 our Supreme Court in the Brown case held that appellant was not a public charity that it was "merely an association for mutual profit or benefit." In December, 1945, the United States Circuit Court of Appeals of this circuit, in a proceeding by the same society to test its liability under the Social Security Act reached the same conclusion. In that case, *United States* v. *La So-*

*ciete Francaise*, 152 F.2d 243, 245, the court gave a clear résumé of the nature of appellant's organization and the manner of the conduct of its affairs. We quote (p. 245):

"The by-laws of the French Mutual Benevolent Society state 'the society is founded on the basis of mutuality for the treatment of sick members. . . .' The underlying purpose of its organization, as we understand it, was to afford its members the best possible medical, hospital and surgical attention at the lowest possible cost. Recognizing the financial return that would be available by expanding its activities so as to make available to non-members its facilities for treatment it entered that field. This resulted in greatly increased operations and greatly increased income and feeling that its members should benefit from this enlargement of its business it charged a greater fee for non-members than for members. This assisted in the betterment of its plant and all other facilities which afforded the opportunity for more complete and better treatment of members at lower cost, a service which *inured* to the benefit of members.

"This service was of value. The proceeds that made it possible flowed from the business venture of treating non-members. Such business venture is not a charity in any sense of the word. No member of the Society in receiving the more adequate treatment at a lower cost would consider himself an object of charity but rather that he was reaping the benefit of a wise decision in electing to become a member of an organization which, through its well-managed business activities, had made the added results available to him. The receipt of 37% in 1940 and 67% in 1944 of the total income from non-members demonstrates that the activities of the Society in the non-charitable line was quite considerable and quite substantial.

"The Society has never paid dividends to anyone but profits may inure to the benefit of a private share holder other than by monetary dividend payments. *Northwestern Municipal Association, Inc.*, v. *United States*, 8 Cir., 99 F.2d 460.

"The case of *United States* v. *Proprietors of Social Law Library*, 1 Cir., 102 F.2d 481, is relied on by the Society, but the Government correctly points out this distinction: 'There are points of similarity in the cases. But the vital one is lacking—the proprietors did not benefit at the expense of the outsiders.' "

The same distinction may be made here. The parties stip-

ulate that for the "four fiscal years ending February 29, 1940, the daily average number of hospitalized patients was 180.75, and the total annual average number of patient days at its hospital was: Members 45,565; non-members: 20,322; that said figures are exclusive of calls and consultations by members of the outpatient department, and which during said period, annually averaged 35,381; that said outpatient department comprises consultations by members at the clinic at said hospital, calls by staff physicians at members' homes, and calls by members at offices of staff physicians."

Under these circumstances it is idle to argue that the Societe is "engaged in or devoted to" charitable, benevolent, or public work.

Order affirmed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 10, 1946.