[L. A. No. 22217. In Bank. May 5, 1953.]

In re LOS ANGELES COUNTY PIONEER SOCIETY, a Corporation, in Process of Voluntary Dissolution. LOS ANGELES COUNTY PIONEER SOCIETY et al., Appellants, v. HISTORICAL SOCIETY OF SOUTHERN CALIFORNIA (a Corporation) et al., Respondents; THE PEOPLE et al., Interveners and Respondents.

854

Morris Lavine for Appellant Los Angeles County Pioneer Society.

Roy Howard for Appellant Lelande.

Lawler, Felix & Hall and Oscar Lawler for Respondents.

Edmund G. Brown, Attorney General, and Edward Sumner, Deputy Attorney General, for Interveners and Respondents.

TRAYNOR, J.—Los Angeles County Pioneer Society and Harry Lelande, a member thereof, appeal separately from an order appointing the Historical Society of Southern California trustee of all property in the possession of Pioneer. The order was entered after the trial court determined that Pioneer held its property for charitable purposes, that Pioneer had repudiated its trust, and that appointment of Historical as trustee was necessary to carry out the purposes of the trust. We have concluded that the order is amply supported by the evidence and must be affirmed.

Pioneer was founded in 1897 as an unincorporated association of pioneers living in Los Angeles County, with about 600 members. In 1910 the members incorporated as a non-profit corporation. Over the years membership decreased until in 1941 there were less than 100 members. In that year and later years Mrs. Emma Stoltenberg, a member of Pioneer, made substantial gifts to Pioneer and on her death in 1946 left additional sums to Pioneer by will. Her gifts amounted to about $53,000. The money was used to purchase a building that was used for meetings of Pioneer and rented for commercial purposes. The membership continued to decrease and in 1948 the members decided to dissolve the corporation, distribute the assets among themselves, and continue the organization as an unincorporated association to carry out the purposes of the articles of incorporation.

To determine whether its assets were impressed with a trust, Pioneer filed an action for declaratory relief against a member of the society. On June 1, 1949, judgment was entered declaring that no trust of any kind was impressed upon the assets. Thereafter the membership, by a petition signed by 53 of the 58 members, agreed to dissolve the corporation. The assets were converted to cash and, since the property owned by the corporation had greatly appreciated in value, $95,243.54 was realized. Pioneer then petitioned the superior court for judicial supervision of the dissolution. (Corp. Code, § 4607.) Several members of Pioneer objected to the dissolution. Pursuant to stipulation of the parties, the attorney general filed a petition in intervention, alleging that Pioneer held its assets in trust and praying that a new trustee be appointed on the ground that Pioneer had abandoned its trust. The court ordered that the assets be impounded. On May 19, 1950, the court entered judgment that Pioneer was a charitable corporation, that its assets were dedicated to charitable purposes, that it had abandoned its trust and was threatening

to divert the assets to the private benefit of its members, and that appointment of a new trustee was necessary. The judgment was entitled "interlocutory judgment" and the court retained jurisdiction to make such further orders as were necessary to a complete determination of the action. Pioneer did not appeal. On October 18, 1950, after a further hearing, the court appointed Historical trustee and ordered the impounded assets turned over to it. The present appeals are from this order.

The first question presented is whether the trial court correctly determined that all of the assets of Pioneer were given and received for charitable purposes and held by Pioneer for those purposes.

Pioneer contends that the declaratory relief judgment is res judicata as to the question whether Pioneer holds its assets for charitable purposes, and characterizes the opposition to the dissolution proceedings as a collateral attack on the former adjudication, relying upon *City of San Diego* v. *Superior Court*, 36 Cal.2d 483 [224 P.2d 685]. Historical, on the other hand, contends that the declaratory relief action was collusive and a fraud on the court, pointing out that all evidence therein was presented by stipulation, that Pioneer paid the attorneys' fees for both plaintiff and defendant in that action, and that the two opposing attorneys subsequently joined forces and together represented Pioneer at the trial of the dissolution proceedings. (See *Guardianship of Jacobson*, 30 Cal.2d 326, 333 [182 P.2d 545].) ▮ It is unnecessary to pass upon Historical's contention, since the declaratory relief judgment is res judicata only against persons who were parties or in privity with parties thereto. (Rest. Judgments, § 77; *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 813 [122 P.2d 892]; *City & County of Denver* v. *Denver Land Co.*, 85 Colo. 198, 201 [274 P. 743].) The attorney general was not a party to the declaratory relief action and was not in privity with parties thereto and, accordingly, he was not bound by that adjudication and was free to contend in the dissolution proceedings that Pioneer held its assets for charitable purposes.

The attorney general and Historical contend that the "interlocutory judgment" entered on May 19th was an appealable judgment that became final through the failure of Pioneer to appeal therefrom, and that it is now res judicata that Pioneer holds its assets for charitable purposes. ▮ The label of the judgment as "interlocutory" is not determinative upon

this question, since it is the substance and effect of a judgment that determines its finality. (*Lyon* v. *Goss*, 19 Cal.2d 659, 669-670 [123 P.2d 11] ; *Peninsula Prop. Co.* v. *County of Santa Cruz*, 106 Cal.App.2d 669, 678 [235 P.2d 635].)

■ An appeal lies only from a final judgment, except in certain cases not applicable here. (Code Civ. Proc., § 963.)

■ "As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." (*Lyon* v. *Goss, supra*, 19 Cal.2d 659, 670.) ■ In the present case the May 19th judgment provided that Pioneer should account to the court for the performance of its duties as trustee, that a new trustee should be appointed to replace Pioneer, and that the court would from time to time "make such other and further orders as are competent, lawful and proper for a complete determination of this action." The assets of Pioneer were impounded by the court on February 15, 1950, but it was not ordered that they be turned over to Historical until the order of October 18th. Since the court expressly reserved for future decision questions regarding the rights, duties, and liabilities of Pioneer, the May 19th judgment was not final as to Pioneer and was not appealable. (*Erickson* v. *Boothe*, 35 Cal.2d 108, 109 [216 P.2d 454] ; *Lacey* v. *Bertone*, 33 Cal. 2d 649, 653 [203 P.2d 755] ; *Lyon* v. *Goss, supra*, 19 Cal.2d 659, 671; see cases collected in 4 C.J.S., Appeal and Error, pp. 184-193.) The conclusion that Pioneer could not appeal from the judgment of May 19th disposes of the contention of appellant Lelande that the appeal by Pioneer must be dismissed because it was taken too late.

Since neither the declaratory relief judgment nor the May 19th judgment settled the issue whether Pioneer held its assets for charitable purposes, the determinative question is whether substantial evidence supports the order of October 18th. The articles of incorporation of Pioneer provide: "That the purpose for which this corporation is formed is to cultivate social intercourse and friendship among its members, to collect and preserve data touching the early history of Los Angeles County and the State of California, to collect and preserve articles, specimens and material things illustrative

or demonstrative of the customs, modes and habits of the aforesaid times in said State; to perpetuate the memory of those who, by their labors and heroism, contributed to make the history of said County and State; and in furtherance of said purpose [to do all acts] necessary and convenient for the promotion of the aforesaid purpose; and to exist as a social corporation under the provisions of the laws of the State of California, covering such corporations, and not for pecuniary profit.'' In Pioneer's answer to the petition in intervention it is alleged that between 1945 and 1950 Pioneer engaged in acquiring material concerning the pioneers and founders of Los Angeles County and the State of California; that Pioneer perpetuated the memory of those who by their labors and heroism contributed to make the history of the county and the state; that the members attended a meeting at the Biltmore Hotel in 1948 to honor the memory of the dead pioneers during the discovery of gold in California; that Pioneer participated in the erection of a plaque at Inglewood, California, to mark the site of the first school building in Inglewood; that Pioneer held four picnics at which time the memory of the former pioneers and founders of Los Angeles County were commemorated; that in 1947 Pioneer celebrated the 166th anniversary of the founding of the city of Los Angeles and the members dressed in costumes of the Spanish period; that at the monthly meetings talks and discussions were held recollecting the activities and labors of the pioneers and their memories were perpetuated and honored; and that many further and additional activities were engaged in pursuant to the purposes set forth in the articles of incorporation.

The commemoration of historical events and the collection and preservation of data of historical interest are for the educational and recreational benefit of the community as a whole and are recognized charitable purposes. (Rest., Trusts, § 374; *Estate of Butin,* 81 Cal.App.2d 76, 81 [183 P.2d 304] ; *In re Centennial & Memorial Assn. of Valley Forge,* 235 Pa. 206, 211 [83 A. 683] ; *Steenis* v. *Appleton,* 230 Wis. 530, 533 [284 N.W. 492] ; *Missouri Historical Society* v. *Academy of Science,* 94 Mo. 459, 466 [8 S.W. 346] ; 12 A.L.R. 2d 888-896.) By the allegations in its answer, Pioneer conceded that it was actively engaged in carrying out such objectives. Even if the concessions in the answer are disregarded, the articles of incorporation supply sufficient evidence to sustain the action of the trial court. It may be assumed that if

the only purpose of Pioneer were "to cultivate social intercourse and friendship among its members" it would not be a charitable corporation (see 2 Bogert, Trusts and Trustees, § 380, and cases cited therein), but it is clear from a reading of the articles as a whole that the social purposes of Pioneer are incidental to its public and charitable purposes. Since members of a charitable organization often participate in its activities with the object of making new friends and participating in pleasurable group activities in the course of carrying out the charitable purposes of the organization, the incidental social activities of Pioneer do not deprive it of its charitable character. (See *Young* v. *Boy Scouts of America,* 9 Cal.App.2d 760, 764 [51 P.2d 191] ; *Estate of Wirt,* 124 Cal.App. 7, 11 [12 P.2d 95].) The same conclusion was reached in *Estate of Dol,* 186 Cal. 64, 65 [198 P. 1039], where this court held that a gift to Pioneer was invalid under the mortmain statute (Civ. Code, § 1313, now Prob. Code, § 41) on the ground that Pioneer was a charitable corporation. It is not necessary to determine here whether the Dol decision is res judicata as to the issue whether Pioneer is a charitable corporation, as urged by the attorney general, since the action of the trial court in the present case may be sustained by giving the Dol decision the effect of *stare decisis* only.

Pioneer contends that the gifts of Mrs. Stoltenberg were for the benefit of the members of Pioneer personally and were not received for charitable purposes. Her will provided : "the Balance of my estate to be given to the Pioneer Society Meeting at the Biltmore Hotel." The gifts during her lifetime were subject to an oral understanding that the money would be used to purchase a permanent home for the society. Pioneer erroneously assumes that the gift could not be for charitable purposes unless the instrument of gift expressly so provided. "[A] devise to a society organized for a charitable purpose without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created." (*Estate of Clippinger,* 75 Cal.App.2d 426, 433 [171 P.2d 567] ; *Estate of McDole,* 215 Cal. 328, 332 [10 P.2d 75].) Similarly, in the present case the gift of Mrs. Stoltenberg in her will was for the purposes expressed in Pioneer's articles, and the gifts during her lifetime were for a building to be used to carry out those purposes.

The conclusion that Pioneer held its assets for charitable purposes disposes of Pioneer's contention that the trial court

should not have allowed the attorney general to become a party to the dissolution proceedings. ▮▮▮▮ The attorney general is a necessary party to proceedings affecting the disposition of assets of a charitable trust (*People* v. *Cogswell,* 113 Cal. 129, 136 [45 P. 270, 35 L.R.A. 269] ; *Society of Calif. Pioneers* v. *McElroy,* 63 Cal.App.2d 332, 342 [146 P.2d 962] ; Rest., Trusts, § 391; cases collected in 14 C.J.S. Charities, § 62b), and when assets are held by a charitable corporation, as here, the duty to protect such assets is expressly placed upon the attorney general by the Corporations Code. (§ 10207.) Accordingly, it was not error to allow the attorney general to intervene in the dissolution proceedings and challenge the claim of Pioneer that the assets could be distributed for the personal benefit of its members.

The next question to be determined is whether the trial court was justified in appointing a successor trustee. Pioneer contends that the only remedy available to the attorney general was an order of the trial court directing Pioneer to comply with its articles. As previously pointed out, substantial evidence supports the finding of the trial court that Pioneer held its assets for charitable purposes. ▮▮▮▮ Under the Corporations Code a charitable corporation is subject to the same supervision by the attorney general as is a nonprofit corporation holding its assets subject to a charitable trust (§§ 9505, 10207; see 26 So.Cal.L.Rev. 80), and deviations from the purposes stated in Pioneer's articles are thus subject to the same corrective measures that would be taken against a trustee of a charitable trust that similarly refused to carry out its duties.

Pioneer amended its by-laws to close its membership and provide that existing members had a proprietary interest in its assets;[1] it brought a declaratory relief action to obtain a ruling that the assets were not held in trust, paying the attorney fees for both parties thereto; it sold its assets and reduced its property to cash; it commenced dissolution pro-

[1]By-laws adopted May 4, 1948, provided: "The class of active memberships shall have exclusive proprietary rights to the property and assets of the corporation and the voting power of the corporation shall be vested exclusively in the holders of active memberships. Each active member shall be entitled to one vote.

"The social memberships shall have no proprietary rights whatsoever in the property or assets of the corporation and shall not have any voting rights. . . .

"The present paid up memberships of this corporation shall constitute the active memberships of the corporation and those who hereafter become members shall be social members only."

ceedings; and it maintained in the trial court, in a petition for writs of prohibition and mandate,[2] and on this appeal that its assets are not held for charitable purposes. Pioneer's course of conduct throughout these proceedings thus demonstrates that it has abused and abandoned its trust and amply supports the determination of the trial court that a new trustee should be appointed. (Corp. Code, § 10207; *Estate of Grblny,* 147 Neb. 117, 131 [22 N.W.2d 488]; *Attorney General* v. *Armstrong,* 231 Mass. 196, 214 [120 N.E. 678]; Rest., Trusts, §§ 387, 399.) "If the trustees abandon or in any way abuse their trust, equity will correct the abuses and remove the offenders." (*People* v. *Cogswell, supra,* 113 Cal. 129, 141; see Scott on Trusts, § 387.)

Pioneer invokes cases where the evidence showed that the corporation involved was a nonprofit corporation that existed for the private benefit of the members thereof and that the assets were not held for charitable purposes. In such cases it is properly held that the assets are distributed among the members upon dissolution (Corp. Code, § 9801; see *Brown* v. *La Societe Francaise DeB. Mutuelle,* 138 Cal. 475, 477 [71 P. 516]; *Abalian* v. *Townsend Social Center, Inc.,* 112 Cal. App.2d 441, 449 [246 P.2d 965]; 168 A.L.R. 956), but those decisions are not controlling here, since substantial evidence supports the determination of the trial court that Pioneer holds its assets for the charitable purposes expressed in its articles of incorporation.

 Pioneer points out that in 1948 its by-laws were amended to provide that active members "shall have exclusive proprietary rights in the property and assets of the corporation." Whatever may have been the prospective effect of this amendment, it does not appear from the record that any donations were received by Pioneer after the amendment and, of course, the members of Pioneer could not appropriate to themselves the assets previously acquired by the device of renouncing the purposes expressed in its articles.

Pioneer contends that upon dissolution the assets must be distributed among its members and any holding allow-

[2]The petition, 2 Civil 18328, was denied by the District Court of Appeal without opinion on January 11, 1951, and a hearing was denied by this court on March 8, 1951. Pioneer contended that it "was organized for the private interest and advantage of its members," that "the fair and proper thing to do was to dissolve the corporation and distribute the assets," and that "neither the public at large, nor the community of Los Angeles" had "any interest in the affairs of petitioner."

ing the assets to be transferred to another charitable corporation would be a confiscation of the members' property in contravention of the Fourteenth Amendment. The contention is without merit, since the members of Pioneer have not at any time had any right to receive the property.

A charitable corporation cannot dissolve and distribute its assets among its members. (See *Ashton* v. *Dashaway Assn.*, 84 Cal. 61, 69 [22 P. 660, 23 P. 1091, 7 L.R.A. 809] ; Zollmann, American Law of Charities, § 476.) Thus in a case apposite to the present case, the Centennial and Memorial Association of Valley Forge, a charitable corporation, received contributions to perpetuate and preserve the site upon which George Washington had encamped in winter quarters. Upon dissolution, a member contended that the funds should be distributed among the members of the corporation, but the court held that no individual right to the funds existed and that the property should go to another charitable corporation with purposes akin to those of the dissolved corporation. (*In re Centennial & Memorial Assn. of Valley Forge, supra,* 235 Pa. 206, 213 ; see *In re Mt. Sinai Hospital,* 250 N.Y. 103, 113 [164 N.E. 871].)

Pioneer contends that in proceedings under section 10207 a charitable corporation must be given an opportunity to correct its deviation from its articles, as it would if the proceeding were in quo warranto. (§ 4691.) Pioneer's contention comes too late. The attorney general's petition in intervention alleged that Pioneer had failed to comply with its articles and prayed that the court distribute Pioneer's assets to a trustee willing to comply with the charitable purposes expressed in Pioneer's articles. Pioneer stipulated that the petition of the attorney general could be filed and filed an answer denying that its assets were held for charitable purposes, alleging that it had at all times complied with its articles, and praying that its assets ''be distributed pro rata among the members of the Los Angeles County Pioneer Society.'' By the stipulation and the answer Pioneer failed to put in issue in the trial court the question whether the attorney general was obliged to give Pioneer an opportunity prior to the petition in intervention to comply with its articles.

On January 26, 1953, at the oral argument of this case, Pioneer filed a motion to remand the case to the trial court ''for the purpose of making a further order in the above entitled case to permit the society to continue to operate as a society and to revoke its former petition to dissolve the

corporation and further to restore to the society the funds of which the society was divested.'' Pioneer alleged in its motion that on January 19, 1953, the members of Pioneer voted to revoke their petition to dissolve and decided that they would comply with the provisions of the articles.[3] Pioneer's position is that under section 4606 of the Corporations Code it could terminate dissolution proceedings at any time before distribution of the assets, that the assets of Pioneer have not been distributed,[4] and that the trial court does not have power to transfer the assets of Pioneer to Historical if dissolution proceedings are terminated. ▉ The attorney general, however, has power to obtain appointment of a successor trustee under section 10207 of the Corporations Code (see *People* v. *Cogswell, supra,* 113 Cal. 129, 141-142) and there is nothing therein limiting the power of the attorney general to cases where the assets of the charitable corporation have been distributed. It is true that in the present case Pioneer's abandonment of its trust was brought to light in the dissolution proceeding, but it does not follow that termination of the dissolution proceeding by Pioneer would establish that the trust assets should be returned to Pioneer.

Pioneer contends that even if it is held that neither Pioneer nor its members may receive the assets, the trial court should have distributed the assets to the heirs of Mrs. Stoltenberg and not to Historical. We will assume that Pioneer is entitled to raise this point. ▉ In cases where property is conveyed to a trustee with an express declaration of a charitable purpose by the donor, a court of equity will appoint a successor trustee to carry out the charitable purpose expressed by the donor upon failure of the original trustee (*Fay* v. *Howe,* 136 Cal. 599, 603 [69 P. 423]; *Estate of Upham,* 127 Cal. 90, 94 [59 P. 315]; 14 C.J.S. Charities, § 27), and Historical contends that these cases govern here. But in cases where, as here, property is conveyed without restriction to a charitable

---

[3]The motion was not made until about 32 months after the interlocutory judgment, 27 months after the order appealed from, and 6 months after the District Court of Appeal affirmed the order. During this period Pioneer's attention was repeatedly called to its status as a charitable corporation.

[4]The order of October 18, 1950, provided that Historical ''is hereby appointed trustee of all property . . . for which the Los Angeles County Pioneer Society is accountable as Trustee'' and orders all persons having assets or records of Pioneer to forthwith turn such assets over to Historical. Execution of the order has been stayed pending outcome of this appeal. The assets have been impounded and are in the custody of the Farmers and Merchants National Bank of Los Angeles.

corporation and the charitable intent of the donor is ascertained by reference to the charitable purposes of the donee, the courts have had more difficulty. Some decisions state that upon dissolution of the corporation the property reverts to the donor or his heirs (see *Mormon Church* v. *United States,* 136 U.S. 1, 47 [34 L.Ed. 478]; *Mott* v. *Danville Seminary,* 129 Ill. 403, 416 [21 N.E. 927]), and a dictum in an early case indicates that that rule would be followed in this jurisdiction, at least as to real property. (*People* v. *President & Trustees of the College of California* (1869), 38 Cal. 166, 174; *cf. Victoria Hospital Assn.* v. *All Persons,* 169 Cal. 455, 464 [147 P. 124].) ▮ Pioneer contends that the Constitution of the United States compels us to follow here the dictum in the College of California case; it is settled, however, that judicial decisions may be overruled and dicta disapproved without violating either the due process clause or the contract clause of the United States Constitution. (*Tidal Oil Co.* v. *Flanagan,* 263 U.S. 444, 450-451 [44 S.Ct. 197, 68 L.Ed. 382]; *Alferitz* v. *Borgwardt,* 126 Cal. 201, 208-209 [58 P. 460].) Accordingly, we are free to reexamine the dictum in the College of California case.

Decisions holding that gifts to charities revert to the donors upon dissolution have been subjected to severe criticism (see Simes, The Law of Future Interests, § 185; Gray, The Rule Against Perpetuities [4th ed.], § 51.1; Turrentine, *Suggestions for Revision of Provisions of the California Civil Code Regarding Future Interests,* 21 Cal.L.Rev. 1, 14), and other states reach a contrary result. (*In re Centennial & Memorial Assn. of Valley Forge, supra,* 235 Pa. 206, 213; *McAlhany* v. *Murray,* 89 S.C. 440, 446 [71 S.E. 1025]; see, also, *Wilson* v. *Leary,* 120 N.C. 90, 94 [26 S.E. 630, 50 Am.St.Rep. 778, 38 L.R.A. 240]; *Hopkins* v. *Crossley,* 138 Mich. 561, 566 [101 N.W. 822].) ▮ We have concluded that the latter rule should be followed and that a court of equity should appoint a successor trustee to carry out the charitable intent of the donor whether the charitable purpose is found in the terms of the conveyance to the corporation or in the articles thereof, or whether the failure of the corporation is through dissolution or other disqualification. ▮ The policy of the law in favor of charitable gifts requires a court to carry out the dominant purpose of the donor to make a charitable gift for the purposes expressed in the articles of the original cor-

porate donee. (See *Estate of Tarrant,* 38 Cal.2d 42, 49 [237 P.2d 505, 28 A.L.R.2d 419] ; *Estate of Loring,* 29 Cal.2d 423, 436 [175 P.2d 524] ; *Estate of Scrimger,* 188 Cal. 158, 166 [206 P. 65].)　　If the donors of property to a charitable corporation wish the property to revert upon dissolution, they may insert clauses to that effect in their gifts. (See *Estate of Randall,* 341 Pa. 501 [19 A.2d 272] ; Bogert, Trusts and Trustees, § 419.)　If the right of reverter is not expressly reserved, recognition of a right of reverter by the courts would amount to a mere windfall since by the original gift the donors indicated that they preferred the property to be used to carry out the charitable purposes of the donee rather than go to themselves or to their heirs.　A transfer of the assets to the donors or their heirs would thus conflict with the policy that the expressed purpose of the donors should be carried out so far as possible. (See *Estate of Lefranc,* 38 Cal.2d 289, 296 [239 P.2d 617].)　Finally, recognition of the right of reverter presents grave practical difficulties, since in many cases dissolution of the charitable corporation will occur many years after the death of the donors of its assets and it will be extremely difficult or impossible to determine the heirs entitled to the property. For the foregoing reasons, the dictum in *People* v. *President & Trustees of the College of California, supra,* is disapproved.　The trial court therefore properly appointed a trustee in the present case.

　Pioneer contends that Historical is not qualified to act as trustee of the assets.　Even if it is assumed that this question can be raised by Pioneer (see *Society of Calif. Pioneers* v. *McElroy, supra,* 63 Cal.App.2d 332, 342), the selection of Historical as trustee is supported by the record. Historical is a charitable corporation first organized in 1883 and incorporated in 1891.　It has 492 members and is actively engaged in collecting and preserving material of historic interest in Southern California.　The order appointing Historical trustee provides that it shall hold the transferred assets as trustee for the same purposes as those expressed in Pioneer's articles. If Historical does not faithfully perform its duty as trustee, the attorney general will institute appropriate proceedings to correct the noncompliance.

　Appellant Lelande, although not questioning Historical's fitness to act as trustee, contends that the order appointing Historical trustee should have defined Historical's duties in more detail.　The order of the court followed the

provisions of Pioneer's articles.[5] Lelande points out that before it was appointed trustee, Historical adopted a resolution providing that the assets acquired from Pioneer would be used to erect a building to be occupied by Historical and other societies,[6] and contends that the court should have ordered Historical to comply with that resolution. In our opinion, the trial court did not err in limiting its decree to provisions similar to those in Pioneer's articles. This limitation conforms to the wishes of the donors of the assets. In view of our conclusion that Lelande's contentions cannot be sustained, it is unnecessary to discuss the motion of Pioneer to dismiss Lelande's appeal.

The order is affirmed. The motion by appellant Los Angeles Pioneer Society to remand the case to the trial court, the motion by appellant Lelande to dismiss the appeal of appellant Los Angeles Pioneer Society, and the motion of appellant Los Angeles Pioneer Society to dismiss the appeal of appellant Lelande, are, and each is, denied.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I cannot agree that Pioneer was a charitable organization. The Los Angeles County Pioneer Society was organized in 1897 as an unincorporated association. In 1910, it was in-

---

[5] "1. To cultivate social intercourse and friendship among its members;

"2. To collect and preserve data touching the history of Los Angeles County and the State of California;

"3. To collect and preserve articles, specimens and material things illustrative or demonstrative of the customs, modes, and habits of the aforesaid times in said State;

"4. To perpetuate the memory of those who by their labors and heroism contributed to make the history of said County and State;

"5. And in furtherance of the aforesaid purposes, to receive, purchase, sell, hold, convey, encumber, lease, rent and maintain all kinds of property, both real and personal;

"6. To build clubhouses and do any and all acts, including but not limited to the borrowing of money, as may be necessary and convenient for the promotion of the aforesaid purposes,

"And it is further ordered [that the appointment is ineffective until Historical files an acceptance of the trusteeship providing that Historical] accepts the trusteeship for the specific purposes set forth above and not for any purpose which will result in any benefit to any private shareholder, member or individual, and that said assets shall in no way be devoted to the carrying on of propaganda or otherwise attempting to influence legislation."

[6] The resolution provided that the funds would be used to erect a building, known as the Emma Stoltenberg Building, that it would be a home for the Historical Society, would have offices for Native Sons of the

corporated as a nonprofit corporation under the existing laws of this state. At the time of incorporation, section 593 of the Civil Code provided that "A nonprofit corporation may be formed by any number of persons, not less than three, for any lawful purposes such as religious, charitable, *social, educational, recreational,* cemetery or for rendering services, which do not contemplate the distribution of gains, profits or dividends to the members thereof, and for which individuals lawfully may associate themselves, subject to laws and regulations applicable to particular classes of nonprofit corporations or lines of activity. *The carrying on of business at a profit incidental to the main purposes of the corporation and the distribution of assets to members on dissolution shall not be deemed forbidden to nonprofit corporations."* (Emphasis added.) Its articles of incorporation provided *"That the purpose for which this corporation is formed is to cultivate social intercourse and friendship among its members,* to collect and preserve data touching the early history of Los Angeles County and the State of California, to collect and preserve articles, specimens and material things illustrative or demonstrative of the customs, modes and habits of the aforesaid times in said State; to perpetuate the memory of those who, by their labors and heroism, contributed to make the history of said County and State; and in furtherance of said purpose, to receive, purchase, sell, hold, convey, lease, rent and maintain all kinds of property, both real and personal; to build clubhouses, and to do any and all other acts necessary and convenient for the promotion of the aforesaid purpose; *and to exist as a social corporation under the provisions of the laws of the State of California,* covering such corporations, and not for pecuniary profit." (Emphasis added.) It was also provided that the corporation should exist for a period of 50 years.

Over the years, membership in the organization decreased until in 1941 there were less than 100 members; at the time of this action there were approximately 58 members still living. It would appear to be clear that the Pioneer Society was organized by a group of people who were brought together by their common interest in the history and historical relics of Los Angeles County and the state and that their purpose in so organizing was to enjoy each other's companionship, to

Golden West and the Native Daughters of the Golden West, and would have a meeting hall to be used jointly by the three foregoing organizations.

exchange reminiscences and information. In Bogert, Trusts and Trustees (vol. IIA, § 380, p. 182 et seq.) it is pointed out that "Gifts to provide social enjoyment for the members of a private club or other limited group have been held not to be charitable. Probably this is on account of the narrowness of their effect, rather than on account of the nature of the benefits to be derived. Good conversation, eating and drinking together, the playing of games, music, and other entertainment no doubt add to the pleasure of life and to some extent maintain health. A gift for a clubhouse where *all* citizens of the community might have such social intercourse has been held charitable. But donations for the support of private or limited organizations of a similar type are lacking in the breadth of influence necessary to give them a public or charitable character." (Emphasis added.) In 1947, it was held in England that a trust to pay income to maintain an institute in London for people of Welsh descent where lectures, study, entertainment, recreation and refreshment could be obtained, for the purpose of promoting the moral, social, spiritual and educational welfare of the Welsh people, is not devoted solely to charitable purposes (*Trustees of Sir Howell Jones Williams' Trusts* v. *Inland Revenue Comrs.*, 1 All Eng.R. 513).

The members of the Pioneer Society held meetings, gave picnics for themselves, held a meeting honoring the memory of the pioneers who discovered gold in California, erected a plaque to commemorate the site of the first school building at Inglewood, California, discussed the pioneers of California and (according to the majority opinion) "recollected" the activities of those pioneers. According to Webster (Int. Dict. 2d ed.) the word recollect means "to recover or recall the knowledge of; to call to mind; to remember." Taking into consideration the average age of 75 years of the members of Pioneer, it seems logical to assume that they were the children of these pioneers to whom they paid tribute and that their purpose in honoring them was not for the benefit of society at large, but to honor their own ancestors as well as to consolidate their fast dwindling ranks for their own social benefit. An organization of canary fanciers, rose horticulturists, or of those interested in purebred cattle, or purebred Irish Setters, or an association of breeders of Palomino horses could hardly be called charitable organizations even though an incidental benefit might be said to result to society at large, or that portion of society also interested in the particular subject. Groups of people vitally interested in the same subject

matter enjoy each other's company because of that interest and often form organizations to discuss, socially, their common interests. Any educational features of any of these organizations are primarily intended for their own benefit, not for the benefit of the general public although nonmembers may improve their knowledge through the efforts of the organization. Such general benefit is purely incidental, however, to the primary purpose of the organization. I am convinced that this is the situation we have here. Mrs. Stoltenberg's first gifts to Pioneer, of which she was a member, were to enable the organization to purchase a building in which to hold its meetings which she attended; her last gift, by will, was to enable her fellow-members and friends to continue their meetings and social events. It is interesting to note that Historical, the organization appointed to act as trustee, was an organization existing at the same time as Pioneer during Mrs. Stoltenberg's lifetime. Had she desired Historical to have the benefit of her gifts, undoubtedly she knew of its existence and could have interested herself therein; had she desired only to benefit the people of this state through the collection of historical data and relics, undoubtedly she would have made gifts to both organizations. To my mind, her membership in Pioneer and her gifts to that organization, clearly support the social character of Pioneer. Another point clearly supporting the social character of the organization is that neither outsiders nor members of the general public were admitted to the meetings of the society. If an organization is intended to benefit the general public, surely the general public should be admitted to meetings for its benefit.

In *Abalian* v. *Townsend Social Center, Inc.*, 112 Cal.App. 2d 441 [246 P.2d 965], it was held that a social center whose articles of incorporation disclose that its purpose was to acquire a club building for the convenience of its members and other persons interested in the old age pension movement was a nonprofit corporation for the benefit of its members, and not a charitable corporation holding assets charged with a public trust. In *Estate of Dol*, 186 Cal. 64 [198 P. 1039], (a case holding Pioneer a charitable organization) it was pointed out that if the "only" object of an organization were to cultivate social intercourse and friendship among its members, it would be for the benefit of the members alone and would not be a charitable organization. I cannot agree that an organization may not be organized for social purposes with a common interest in an educational program without being classified

as a charitable organization. In *Estate of Dol,* 182 Cal. 159, 163 [187 P. 428] (involving the French Hospital in Los Angeles), it was held that "One of the essential features of a charitable use is that it shall be for the public benefit, either for the entire public or for some particular class of persons, indefinite in number, who constitute a part of the public. The persons to be benefited must consist of 'the general public or some class of the general public indefinite as to names and numbers.' (*Estate of Coleman,* 167 Cal. [212], 214 [Ann.Cas. 1915C, 682, 138 Pac. 992, 993] ; *Estate of Lennon,* 152 Cal. 327 [125 Am.St.Rep. 58, 14 Ann.Cas. 1024, 92 Pac. 870].)" Here the members of Pioneer were definite and known. Here, as in *Estate of Dol, supra,* 182 Cal. 159, no one was entitled to the benefits of the society except those who became admitted as members and paid their dues. It was there held, in line with *Stewart* v. *California Medical Etc. Assn.,* 178 Cal. 418, 419 [176 P. 46], that "the declaration in the articles alone are insufficient to establish the character of the St. Helena Hospital as a public charity, and the evidence of the manner in which it was conducted shows that it was not" and "the character of the institution is to be determined, not alone by the powers of the corporation as defined in its charter but also by the manner of conducting the hospital." That statement is pertinent here. I have heretofore shown that this organization was conducted for the benefit of the members alone; that its meetings were not open to the public; that its primary purpose was the social benefit to be derived by the members from their association with each other. In *Estate of Henderson,* 17 Cal.2d 853, 857 [112 P.2d 605], this court said "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. (*People v. Cogswell,* 113 Cal. 129 [45 P. 270, 35 L.R.A. 269] ; *Estate of Merchant,* 143 Cal. 537 [77 P. 475].) (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. (*People* v. *Cogswell, supra; Estate of Hinckley,* 58 Cal. 457; *Fay* v. *Howe,* 136 Cal. 599 [69 P. 423].) The charitable nature of an institution is determined on the same basis." (See *In re La Societe Francaise Etc. Mutuelle,* 75 Cal.App.2d 770 [171 P.2d 544].)

In summary, and in applying the tests laid down in *Estate of Henderson, supra,* 17 Cal.2d 853, (1) Pioneer's aims were

to promote the social life of its members through their common interest in California history; (2) The ultimate recipients of any benefits to be derived from the organization were the members in good standing of the organization, not the community as a whole or an unascertainable and indefinite portion thereof.

In a nonprofit corporation existing for the private benefit of its members, upon dissolution assets are distributed among the members (Corp. Code, § 9801; *Brown* v. *La Societe Francaise Etc. Mutuelle,* 138 Cal. 475, 477 [71 P. 516]; *Abalian* v. *Townsend Social Center, Inc.,* 112 Cal.App.2d 441, 449 [246 P.2d 965]; 168 A.L.R. 956). This, I believe, is the result which should be reached here. It seems quite apparent that Pioneer was a nonprofit organization existing for the private benefit of its members who should, upon dissolution, receive a distributive share of the assets held by Pioneer.

Assuming, however, only for the purposes of the following argument that Pioneer is a charitable organization, I see no valid reason why it should not be able to correct its deviation from its articles of incorporation. In other words, why should not Pioneer be permitted to continue to operate as a society and to revoke its former petition to dissolve the corporation? It is admitted in the majority opinion, that Pioneer's "abandonment of its trust was brought to light in the dissolution proceeding." Section 4691 of the Corporations Code provides that "if the cause of action is a matter or act which the corporation has done or omitted to do that can be corrected by amendment of its articles or by other corporate action, such suit *shall not be maintained unless* (a) the Attorney General, at least 30 days prior to the institution of suit, has given the corporation *written notice* of the matter or act done or omitted to be done, and (b) *the corporation has failed, neglected, or refused to institute proceedings to correct it within the 30-day period* or thereafter fails to prosecute such proceedings." (Emphasis added.) The majority calls attention to the fact that during the time intervening after the interlocutory judgment, the order appealed from and the affirmance by the District Court of Appeal, Pioneer's attention was repeatedly called to its status as a charitable organization. No mention is made of the fact that there was still to be made a determination by this court. In the event that this court had not decided that Pioneer was a charitable organization, it would have had the right to dissolve and distribute its assets among its members. Why then, should it not be given notice

after the final determination has been made, that it must conform to its articles or that a successor trustee will be appointed? It is interesting to note that the title of section 4691 is ''Conditions precedent: Notice affording opportunity for corrective action.'' The majority states that under section 10207 of the Corporations Code, the attorney general has power to obtain the appointment of a successor trustee and that ''there is nothing therein limiting the power of the Attorney General to cases where the assets of the charitable corporation have been distributed.'' The assets involved here have not been distributed but have been impounded pending the final determination of the issues involved. Section 10207 provides that ''Each such [charitable] corporation shall be subject at all times to examination by the Attorney General, on behalf of the State, to ascertain the condition of its affairs and to what extent, if at all, it may fail to comply with trusts which it has assumed or may depart from the general purpose for which it is formed. In case of any such failure or departure the Attorney General shall institute, in the name of the State, the proceedings necessary to *correct* the noncompliance or departure. Except as specially approved by the Attorney General such a corporation shall not accumulate income for a period longer than five years.'' (Emphasis added.) The section provides for ''correction'' of a noncompliance or departure; it does not prohibit a self-correction by the erring corporation. If Pioneer terminates its dissolution proceedings, and continues as it has done in the past, then, under the view taken by the majority of this court, it will be carrying on its charitable purposes and there is no reason why a successor trustee should be appointed to administer Pioneer's funds. No authority is cited for the proposition that Pioneer may not be permitted to correct its deviation from its articles by withdrawing or revoking its dissolution proceedings nor have I found any such authority. The Restatement of Trusts (§ 392) provides that (comment a) ''A suit in equity can be maintained by the Attorney General to compel the trustees of a charitable trust to perform their duties as trustees, or to enjoin them from committing a breach of trust, or to compel them to redress a breach of trust, or to appoint a receiver to take possession of the trust property; or to remove the trustees and appoint other trustees.'' There are, thus, several remedies other than the appointment of a successor trustee.

There was no bad faith on the part of Pioneer in voting to dissolve the corporation. It filed an action in declaratory relief and obtained a judgment to the effect that no trust of any kind was impressed upon its assets; it voted to dissolve and then petitioned the superior court for judicial supervision of the dissolution; it agreed that the attorney general might file a petition in intervention. Under the circumstances presented and in view of the fact that the applicable statutes do not prevent it, there appears to be no sound reason why Pioneer should not be permitted to revoke its dissolution proceedings and carry out the trust imposed by its articles since it is finally adjudged to be a charitable organization.

I would, therefore, reverse the judgment.

Schauer, J., concurred.

Appellants' petitions for a rehearing were denied May 28, 1953. Carter, J., and Schauer, J., were of the opinion that the petitions should be granted.

The following opinions were then filed.

CARTER, J.—I dissent from the order denying appellant's petition for rehearing, and in view of the contention of appellant in said petition that the effect of the decision of this court is to deprive it of its property without due process of law, I am constrained to comment on this contention.

The record in this case presents one of the most outrageous examples of legalized larceny which has come under my observation.

The Pioneer Society was organized as an unincorporated association; the evidence shows clearly, and without contradiction, that it was intended to be, and was, a purely social organization. As such an unincorporated association and social organization, it had the right, upon dissolution, to distribute its assets among its members.

The record discloses that Pioneer has acted with the utmost good faith throughout. In the first instance, Pioneer sought a judicial determination of its charitable, or social, status. The first judicial determination was that it was a nonprofit, noncharitable organization. A later judicial determination by the same court held it to be a charitable organization. Pioneer then sought to abandon its dissolution proceedings and, in accordance with the last judicial determination, carry on as a charitable organization. This it has not been permitted

to do. A majority of this court has declared that Pioneer is a charitable organization and that it may not be permitted to correct its so-called deviation from its articles of incorporation; that its assets must be turned over to a successor trustee— the Historical Society. As I pointed out in my dissenting opinion, this is a clear violation of the statutory provisions involved, which permit *corrective* action by a charitable organization which has deviated from its articles. Even if Pioneer is a charitable organization (which I am firmly convinced it is not) it has the right to abandon its dissolution proceedings and correct any deviation from its articles of incorporation. To refuse to permit such corrective action is, in my opinion, to deprive Pioneer of its property without due process of law under both the federal and state Constitutions.

With respect to corporations, this court is empowered only to apply the statutory law of the state as it was written by the Legislature; it is not empowered to ignore the statutory provisions relating to corporations and effect a distribution of corporate assets as its collective whim may dictate.

For the reasons stated herein, and in my dissenting opinion, I would grant a rehearing and reverse the judgment.

SCHAUER, J.—I concur generally in the reasoning and conclusion of Justice Carter. Particularly do I find no justification whatsoever for refusing to permit Pioneer to take the corrective action which it could not know it should take until this court had ruled that it could not rely on the prior final judgment or its charter from the state.

Pioneer, by its articles of incorporation and the laws of California was not a charitable corporation; it never intended or pretended to be a charitable corporation; it paid taxes as a noncharitable corporation; it was adjudicated not to be a charitable corporation. With that background it instituted a proceeding for dissolution as it had a right to do. Its every act shows the good faith of the fine citizens composing it. Now this court rules that it is a charitable corporation and in the same judgment punishes Pioneer for instituting the lawful dissolution proceeding by stripping it of its assets and giving them to another; it refuses even to permit Pioneer, despite the authorization of the statute, to discontinue the dissolution proceeding and to carry out the trust which the court adjudges to exist.

Such action in my view is contrary to fact, to law, to justice, to reason and to constitutional guarantees.