[Civ. No. 17484. First Dist., Div. One. Jan. 15, 1958.]

Estate of ETHEL C. QUINN, Deceased. EDMUND G. BROWN, as Attorney General, etc., Appellant, v. PRESTON HATCH, as Administrator, etc., et al., Respondents.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and W. R. Augustine, Deputy Attorney General, for Appellant.

Robert E. Hatch, Leighton Hatch, McDougall & Fairfax, Kenneth R. McDougall and Frank B. Cliff for Respondents.

WOOD (Fred B.), J.—The attorney general has appealed from that portion of the decree of final distribution[1] which awarded the heirs one-fourth of the residue of the testatrix' estate, leaving intact the portion thereof which awarded three-fourths of the residue to three charitable organizations[2] selected and designated by the court, one-fourth to each of the three charities.

The attorney general contends that the entire residue, not merely a portion of it, should have been awarded to charity (none to the heirs) in view of a clause of the will which directed that the residue of the estate "go to charity," even though without designation by the testatrix of the specific charitable purposes or objects of her bounty and

[1] This decree bears the heading "Decree and Order Granting Petition for Leave to Compromise and of Final Distribution." It was dated and filed April 16, 1956.

It was amplified, in certain respects not material to the present inquiry, by an order and decree designated "Amended and Supplemental Decree and Order of Final Distribution" dated April 23, and filed May 4, 1956.

[2] Three orphanages: (1) Edgewood, The San Francisco Protestant Orphanage; (2) Pacific Hebrew Orphan Asylum and Home Society; (3) The Roman Catholic Orphan Asylum of San Francisco.

without appointment or empowerment of a trustee or other person to select and designate such purposes and objects.

Our study of the record and of the applicable principles of law convinces us that the attorney general rightly so contends. The portion of the decree which he challenges should be reversed.

█ We start with the principle that " ' [c]ourts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law. █ A bequest intended as a charity is not void, and there is no authority to construe it to be legally void, if it can possibly be made good.' (*Estate of Hinckley,* 58 Cal. 457, 513; *Collier* v. *Lindley,* 203 Cal. 641, 654 [266 P. 526]; *Estate of Bunn,* 33 Cal.2d 897, 903 [206 P. 2d 635]; see 14 C.J.S. § 6a, p. 427.)" (*Estate of Tarrant,* 38 Cal.2d 42, 46 [237 P.2d 505, 28 A.L.R.2d 419].)

█ Thus, "where property is conveyed to a trustee with an express declaration of a charitable purpose by the donor, a court of equity will appoint a successor trustee to carry out the charitable purpose expressed by the donor upon failure of the original trustee . . ." (*In re Los Angeles County Pioneer Society,* 40 Cal.2d 852, 864 [257 P.2d 1].) █ Similarly, ". . . where . . . property is conveyed without restriction to a charitable corporation and the charitable intent of the donor is ascertained by reference to the charitable purposes of the donee," a court will appoint a successor trustee to carry out the intent of the donor upon dissolution or other disqualification of the donee corporation. (Same, pp. 864-865. See also *Estate of Faulkner,* 128 Cal.App.2d 575, 579 [275 P.2d 818].)

A gift to " 'a worthy charity selected by my executors' " was sustained in *Estate of Bunn,* 33 Cal.2d 897, 898 [206 P.2d 635]. A similar gift "to charity." the recipient to be " 'designated by my friend Harry I. Rubin' " was deemed fully effective in *Estate of Hurwitz,* 109 Cal.App.2d 302 [240 P.2d 990]. The court in the Hurwitz case quoted the following significant passage from the decision in the Bunn case: " 'The basic legal question in the case is whether a bequest to charity in general, with a power in the trustee to select the beneficiary, is too vague and indefinite to be upheld. . . . [Quoting from Bogert on Trusts and Trustees, § 371, 1134-42] "It is believed that there is no objectionable uncertainty about such a general charitable trust. The trustee of it is under a duty to select any one of the hundreds or thousands of means open to him to benefit mankind in such

a way as to bring about a charitable result. . . . The decisions of the courts in England and in this country can be studied and will guide the trustee to a decision as to what is and what is not charitable. . . . There need be no doubt or ambiguity in the trustee's mind as to his duty. . . .''

" 'Applying the reasoning of Professor Bogert, which rests upon sound principles of law and a proper regard for generous intentions to help persons in need of a practical expression of brotherhood, the trust established by Mrs. Bunn should be upheld.' '' (P. 305.)

The failure of a testatrix to designate a trustee when declaring that the residue of her estate ''go to the poor soldiers Letterman Hospital'' presented no serious difficulty in *Estate of DeMars,* 20 Cal.App.2d 514 [67 P.2d 374]; hearing by Supreme Court denied. The court effectuated the donor's intent by appointing a trustee to administer the fund, designating the commandant of the hospital for that purpose. Especially significant to us is the following statement in the DeMars case: ''Viewing the evidence and the surrounding circumstances, we must hold that the intention of the testatrix to create a trust is clear. The rule applicable is found in Restatement of the Law of Trusts, section 397f [comment (f) of § 397], which reads: 'If the owner of property devises or bequeaths it for charitable purposes and not only does not name a trustee but also does not use language indicating that the property is to be held upon trust, nevertheless a charitable trust will be created. In such a case the court will appoint a trustee to administer the trust. The executor of the will will be permitted to act as trustee if the testator manifested an intention that he should so act. Thus, if a testator directs that a certain sum shall be used to aid needy students, or to assist the poor, or to promote religion, a charitable trust is created. It is not essential to the validity of the charitable trust that the charitable purpose should be specifically designated. Thus, if a testator bequeaths a certain sum ''to charity'' a charitable trust is created.' '' (P. 516.)

Here we have the answer to our problem spelled out for us. Neither the failure to appoint a trustee (*Estate of DeMars, supra,* 20 Cal.App.2d 514, and § 397, comment (f), Rest., Law of Trusts) nor the failure to designate a specific charitable purpose (*Estate of Bunn, supra,* 33 Cal.2d 897; *Estate of Hurwitz, supra,* 109 Cal.App.2d 302; and comment (f) of § 397 of the Restatement) prevents a court from effectuating the will of the testator. It is wholly and simply a

case of observing and carrying out the basic policy of the law that a "will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." (Civ. Code, § 1317, from 1872 to 1931; Prob. Code, § 101, from 1931 to date.)

We are mindful of the historical concept of the Crown's prerogative to designate specific charitable objects and purposes when a will failed to so specify and also failed to designate a trustee to make the selection. Courts in some of our states seem to have found that a barrier to the assertion of judicial jurisdiction in such a situation. Justice Holmes disposed of that problem cogently and convincingly in *Minot* v. *Baker* (1888), 147 Mass. 348 [17 N.E. 839 at 846 and 847, 9 Am.St.Rep. 713].

 Accordingly, we find that the gift "to charity" in this case need not and should not fail. The action of the trial court in selecting specific charitable objects and appointing trustees to administer the funds allocated to those several objects (by directing distribution of a portion of the residue to each of the three orphanages) seems quite appropriate and legally proper. But we find no legal sanction for the diversion of any of the residue to the heirs or to any other noncharitable purpose.

The heirs seek to justify this diversion upon the ground that the element of compromise was involved.

The question of the propriety of a compromise was presented by the heirs. First, they petitioned for final distribution and for determination of heirship.[3] After hearing these petitions and a petition by the executor for final distribution, the court on December 1, 1955, entered minute orders denying the heirs' petitions and granting the executor's petition. At the same time the court filed a memorandum of opinion directing that the residue be distributed in equal shares to the three orphanages and declaring that a "written order" would "be prepared, signed and filed." Some time went by without any such order. On February 6, 1956, the heirs and their attorney filed a petition for leave to compromise or for allowance of compensation. They averred that the question of this gift "to charity" is one of first impression and thus presents a basis for compromise. The attorney general filed objections to this petition, alleging that the bequest is valid and does not

---

[3]The attorney general filed objections to the petition for final distribution and an answer to the heirship petition.

present a case of first impression, that the heirs have no interest in the residue, and that neither the executor nor the attorney general is in a position to entertain any proposition for a compromise in this matter. A hearing was held on March 7, 1956. The attorney general actively participated and opposed the compromise, saying in part "the Attorney General still is responsible for the charitable trusts, and as far as we are concerned there will be no compromise."

April 13, 1956, a memorandum of opinion was filed declaring that the petition for leave to compromise should be granted, that the three charities designated by the court agree that a compromise will best effectuate the purposes and intent of the testatrix in view of a substantial question as to the validity of the bequest to charity and the delay that any other course of action will entail, that no basis for intervention or interference by the attorney general exists and he is not at this time a proper party to the proceeding, and that the residue should be distributed one-fourth to each of the three charities and one-fourth to the heirs, conditioned upon execution by the heirs of a covenant not to appeal or seek to invalidate the compromise, a written order to this effect to be prepared, signed and filed.

On April 16, 1956, such an order (the order and decree appealed from) was filed. It recites the appearance of all the parties, including the attorney general, and finds (1) that certain allegations of the petition for leave to compromise are true, (2) that "if the purported charitable bequest . . . is a good and sufficient bequest as a matter of law, then a reasonable and proper distribution in accordance with the apparent intent of the testatrix and the provisions of said last will . . . is to the following named charities one-third (⅓) each," naming them, (3) that all of the interested parties (the heirs and the three charities) consent to division of the residue in the amounts of one-fourth to each of the charities and one-fourth to the heirs, and (4) that to avoid further expense, delay and dissipation of the estate, it is fair, reasonable and for the best interests of all parties that such distribution be made. It then grants and approves the petition for leave to compromise and orders distribution of the residue in accordance with the findings.

We do not find in the "consent" of the designated charities legal sanction for diversion of any portion of the residue to a noncharitable purpose. The heirs argue (the charities have not filed any briefs) that each charity as the

designee of a one-third interest in the residue had the right to use some of that interest and relinquish it to the heirs in consideration for this compromise and settlement. However that might be if such one-third interest in the whole of the residue had vested and then were challenged by some one claiming a better title (as to which we express no opinion), it is not this case. No such "interest" had vested. Those "interests" were inchoate. Indeed, they had no real existence, potential or otherwise. The court could have eliminated the charities mentioned and substituted other charities at any time prior to the filing of the decree of distribution.

The court's opinion of December 1, 1955, never had any operative effect. Its direction for allocation of all the residue to the three orphanages was superseded by the opinion of April 13, 1956, which directed distribution of one-fourth to each charity and the remaining fourth to the heirs. By its own terms it too was inoperative. Finally, the order and decree of April 16, although it declared that *"if"* the bequest were good in law distribution of the entire residue to these charities would be in accord with the testatrix' intent, actually *found in favor of the compromise and ordered distribution in accordance with the compromise,* diverting one-fourth of the residue to the heirs.

Meanwhile, throughout these proceedings, the attorney general was an active participant, stoutly maintaining the validity of the trust "to charity" and vigorously opposing diversion of any of the residue to noncharitable purposes. He, acting for the state as *parens patriae,* had a right and a duty to participate and protect this gift to charity (*People* v. *Cogswell,* 113 Cal. 129, 136 [45 P. 270, 35 L.R.A. 269] ; 5 Am. Jur. 246-247, § 17; 10 Cal.Jur.2d 243, § 39; Corp. Code, §§ 9505, 10206, 10207; and Gov. Code, §§ 12511 and 12512.) In a recent case it was held not error to allow the attorney general to intervene in the dissolution proceedings of an incorporated charity and challenge a claim that the assets could be distributed for the personal benefit of the members. (*In re Los Angeles County Pioneer Society, supra,* 40 Cal.2d 852, 860-861.)

He properly entered these proceedings by answering the heirship petition and filing objections to the heirs' petition for distribution, as suggested by our Supreme Court in *Estate of Quinn,* 43 Cal.2d 785, 787-788 [278 P.2d 692]. He remained in by filing objections to the heirs' petition for leave to com-

promise[4] and taking an active part at the hearing of that petition. The heirs' motion to dismiss the appeal should be denied.

The motion to dismiss the appeal is denied and the portion of the order and decree appealed from is reversed with directions to provide for the proper disposition of the remaining one-fourth of the residue to charity, not inconsistent with the views herein expressed.

Peters, P. J., and Bray, J., concurred.

[4]This petition does not classify quite as readily as the other two which the heirs filed.

Actually, it partook largely of the nature of a petition to determine heirship. In it they pleaded and asserted their status as heirs of the decedent, using that as a predicate for their suggestion as to the desirability of effecting a compromise.

Therefore, section 1080 of the Probate Code seems applicable. It declares that ''[a]ny person may appear and file a written statement setting forth his interest in the estate.'' That obviously, includes the attorney general, in such a case as this.